## WOOD vs. HUSTIS.

The words "any stream that is not navigable," in the Mill Dam Law (sec. 1), were designed to exclude not only streams which are navigable in fact, but such as have been legally declared public highways.

But although the legislature, in 1839, declared Rock River a public highway, yet a subsequent act (Laws of 1845, p. 99) having authorized the erection of a dam thereon, and provided that the same should be subject to all the provisions of the Mill Dam Law of 1840, persons whose lands were flowed by said dam could have only the remedy provided by that act.

A repeal of the general Mill Dam Law would not affect the rights of the proprietors of said dam.

Whatever would be good ground for arresting a judgment, is good ground for reversing it.

Where, by the provisions of a *public* statute, a plaintiff was not entitled to maintain his action, a judgment in his favor must be reversed, although the attention of the court was not called to such statute, and there was no error in the only ruling to which exception was taken.

APPEAL from the Circuit Court for *Dodge* County.

This was an action at common law to recover damages for the flowage of the plaintiff's lands by reason of the maintenance, by the defendant, of a dam across Rock River at sec. 9, Town 10, Range 16, in Dodge county. Judgment for the plaintiff.

*Enos & Hall*, for appellant.

*Billinghurst & Lewis*, for respondent.

*By the Court*, PAINE, J. This action was brought as a common law action, to recover damages for flowing the plaintiff's land, caused by the erection of a dam on Rock River in Dodge county. The complaint avers that the river at that point was navigable in fact, and was meandered and returned as navigable by the surveyors of the United States. The answer denied that the river was there navigable in fact; and on the trial the defendant offered evidence to show that it was not, which was rejected.

This question was supposed to be material in order to determine whether the general mill dam law was applicable to this dam. That law, by its terms, applies only to streams "not navigable." And it is assumed by the defendant that if he could show that the stream was not navigable in fact at the point where his dam was, then the mill dam law would be applicable, and the plaintiff would be obliged to seek his remedy under that law, and could not maintain this action. But if this were the only reason for holding the mill dam law applicable, we should be of opinion that the court below properly rejected the evidence offered. In 1839, Rock River was declared to be a public highway to a point above the one in question. Sess. Laws of 1839, p. 99, sec. 4. This is plainly equivalent to declaring it a navigable stream. And by repeated acts of legislation it has since been recognized as such. When the legislature, therefore, in the mill dam law, used the words "not navigable," they used them not in the common law.

VOL. XVII—27

sense, as including all rivers wᵤ re the tide does not ebb and flow, but in the sense in which they have long been used in this country, as including only such as were not navigable in fact for any of the useful purposes of commerce, or such as had not been declared to be navigable or public highways by the law itself. It will be observed that there is no question here as to the effect of an act of the legislature declaring a stream navigable, which is not so in fact, as against the rights of the owner of the land over which it passes. It is simply a question as to what the legislature meant by the word "navigable." And where by one law they have declared a stream to be a public highway, thus necessarily implying that it is navigable, and then they pass another law in respect to streams "not navigable," it is impossible to suppose they intended to include the former. We should then be of the opinion that the court properly rejected the inquiry whether the stream was navigable in fact, as a means of determining whether the mill dam law was applicable, for the reason that it was bound to assume that it was not applicable to a stream which the legislature had previously declared to be a public highway.

But although that law was not applicable for the reason that the stream was not navigable, it was for another reason, which is, that it was expressly made so by the special act authorizing the erection of this dam. Laws of 1845, p. 99. It is there provided that this dam "shall be subject to all the provisions of an act of the legislative assembly of the territory of Wisconsin, approved January 13, 1840," which was the previously existing mill dam law. This incorporates the provisions of that law, including those relating to the remedies of owners whose lands might be flowed, into the special act, and makes them applicable to this dam. It follows that the issue attempted to be made in respect to the navigability in fact of the stream, was wholly immaterial. Even though navigable in fact, the legislature had expressly extended to this particular dam the provisions of the general law, otherwise applica-

ble only to streams not navigable. Those provisions would remain in force in respect to this dam, even though the general law should be repealed. And the result is, that the plaintiff could not maintain his common law action, but would be driven to the remedy provided by that act.

The effect of this special provision does not appear to have been suggested to the court below, and as that court properly enough rejected the evidence as to the navigability of the stream, we have had some doubt whether the judgment ought to be reversed here, upon a question that was not decided there. But this act, though special, is nevertheless public. It regulates the rights of individuals and of the public in what the legislature has declared a public highway. Its subject matter therefore makes it such an act as the courts are bound to take notice of. This being so, it appeared on the face of the complaint that, as a matter of law, the plaintiff could not maintain this action. This would have been good ground for arresting the judgment, although the objection had not been previously taken in the court below. And whatever is good ground for arresting the judgment, is good for reversing it. 1 Chitty, 197 ; *Hazen vs. Essex Company*, 12 Cush., 475.

The judgment must be reversed, with costs.