IN RE HORICON DRAINAGE DISTRICT.

*May 8—June 21, 1906.*

*Drainage districts: Appointment of commissioners: Appealable order: When order is made.*

1. In a proceeding to establish a drainage district a decision in writing that commissioners be appointed was made before, but the formal order appointing such commissioners was not entered until five days after, ch. 419, Laws of 1905, went into effect. *Held,* that the appealability of such order must be determined by the law as it stood prior to said act of 1905.
2. Even prior to the enactment of ch. 419, Laws of 1905, an order appointing commissioners in drainage proceedings was not "a final order affecting a substantial right" within the meaning of subd. 2, sec. 3069, Stats. 1898, and was therefore not appealable.

APPEAL from an order of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Dismissed.*

This is an appeal from an order of the circuit court for Dodge county in a proceeding to establish a drainage district under secs. 1379—11 to 1379—31, Stats. 1898, and acts amendatory thereof and supplementary thereto. The petition was signed by a corporation known as the Rock River Valley Lumber Company and others. It alleges, in substance, that the proposed district extends from the northern line of Dodge county southerly through Horicon marsh, the city of Horicon, and beyond the village of Hustisford, a distance of approximately twenty-three miles; that the district embraces about 35,000 acres of land and is traversed its entire length by the Rock river. It is further alleged that the Rock river is obstructed by dams, bridges, and other obstructions, and is insufficient to carry off the water which accumulates in ponds and gives rise to vapors, and that the same is dangerous to public health; that the land embraced in the territory is swamp and composed of decayed vegetation, and by reason of insufficient drainage is wet, moist, and impassable except

in dry seasons, and is unfit for cultivation; that if said district were formed and the lands properly drained they would be of great value and contribute to a large extent towards paying the burden of taxation; that the bed of Rock river through said district has become obstructed with refuse matter, débris, decayed vegetation, and other obstructions; that the flow of the river with such obstructions is insufficient to carry off the water, and that it overflows its banks, spreads upon adjoining lands, and settles into ponds, pools, and sink holes, where the water becomes stagnant and gives forth unhealthy vapors, and is dangerous to the public health. The petition contains description of the lands embraced within the proposed territory, and alleges that the scheme necessitates the purchasing or condemning of a dam on the Rock river at Hustisford and the rights of flowage, removal of other obstructions from the river above and below said dam, removal of other dams on the river, deepening and cutting new channels in said river wherever necessary, constructing lateral drains and ditches across the lands described, and altering and removing supports of two railroad bridges in the city of Horicon. The petition further alleges that the petitioners are and constitute the owners of one half and more in area of the lands described, and contains other allegations required by the statute, and prays for the organization of a drainage district under the statute to be known as the Horicon Drainage District, embracing the lands described, and that three commissioners be appointed to execute the work, and for general relief.

The owners of the lands affected by the proposed scheme appeared by their attorneys and filed remonstrances and made motion to dismiss the petition, and also interposed a demurrer. The remonstrances were to the effect that some of the petitioners were induced to sign by fraud, that the proposed drainage would be detrimental to public health and welfare, that the scheme as proposed involved the destruction

·of a navigable lake and the cutting, changing, and shortening of a navigable river, that the scheme is impracticable and improbable if not impossible of successful accomplishment, and that the court had no power to authorize the work pro-posed. The state of Wisconsin also appeared and remon-strated on the alleged ground that in 1858 a dam was built ·on the Rock river and ever since has been maintained, and a lake created, the land under which is owned by the state in trust for the people. The Chicago, Milwaukee & St. Paul Railway Company appeared and remonstrated on the ground ·that its rights and property in the lands in question are and have been devoted to a public use, and that the statute does not grant the right to condemn such property for another pub-lic use.

The court declined to dismiss the proceeding or sustain the ·demurrer to the petition, and a hearing was had and testi-mony taken, after which the court on the 9th of June, 1905, made its decision in writing ordering the appointment of ·commissioners as provided by statute and formal findings and ·order to carry out the decision. Afterwards on June 27, 1905, and in pursuance of this decision, an order was entered ap-pointing three commissioners, and further ordering that all proceedings thereafter be had under ch. 419, Laws of 1905, from which order this appeal is taken.

For the appellants there were briefs signed by *Lamoreux .& Husting,* attorneys, and *J. L. O'Connor,* of counsel, and ·oral argument by *Paul Husting* and *C. W. Lamoreux.*

*M. L. Lueck* and *J. E. Malone,* for the respondents.

KERWIN, J. It is contended on the part of the respond-·ents that the order is not appealable, and, if this position is tenable, no other question presented need be considered. The decision of the court appointing commissioners having been made on the 9th day of June, 1905, and before ch. 419, Laws ·of 1905, went into effect, the latter law has no application,

and the appealability of the order must be determined by the law as it existed at the time the court made its decision. The fact that the order was entered on June 27th, five days after ch. 419 went into effect, is of no consequence, since the decision was made and announced June 9, 1905, and the subsequent entry of the formal order was the entry of the decision of the court made June 9th. The decision of the court and order made thereunder, therefore, must be regarded as made before ch. 419, Laws of 1905, went into effect, and its appealability must be determined by the law as it stood prior to the passage of said ch. 419. Since no appeal from this order is provided for under secs. 1379—11 to 1379—31, Stats. 1898, inclusive, as amended, the right of appeal must be found in the statute governing appeals from orders in special proceedings or it does not exist. The proceeding before us is clearly a special proceeding. Secs. 2594, 2596, Stats. 1898. Therefore no appeal is given from an order in such proceedings, except the order be a final order affecting a substantial right. Subd. 2, sec. 3069, Stats. 1898. As said by this court in the late case of *Kingston v. Kingston,* 124 Wis. 263, 264, 102 N. W. 577:

"A final order in a special proceeding, within the meaning of this statute, is one which determines and disposes finally of the proceeding—one which, so long as it stands, precludes any further steps therein. It bears the same relation to the proceeding in which it is entered as the final judgment bears to an action."

The order in question does not determine the proceeding so as to bring it within the class of appealable orders designated by the statute. Sec. 1379—11, Stats. 1898, respecting the establishment of drainage districts, provides for the filing of petition asking for the organization of a drainage district, and sets forth what the petition shall contain. Sec. 1379—12 provides for notice, and sec. 1379—13, as amended by ch. 43, Laws of 1901, provides for a hearing upon the petition, and

further provides that, upon such hearing, if it shall appear that the petition has been signed as required, and that the proposed work is necessary or will be useful for drainage of lands proposed to be drained, and that the public health and welfare will be promoted by the construction of the work, the court shall so find and appoint three commissioners to lay out and construct the proposed work. Sec. 1379—14 provides for the taking and subscribing of an oath by the commissioners and the giving of a bond. Sec. 1379—15 provides that the commissioners shall proceed as soon as may be after their appointment, and within such time as the court may direct, to examine the lands described in the petition, and determine and report as specified in this section, and among other things report whether the benefits will equal or exceed the aggregate cost of construction including expenses, costs of proceedings, and damages. Sec. 1379—16 provides that, if the costs, expenses, and damages are more than equal to the benefits that will be bestowed upon the lands to be benefited, they shall so report, and the proceedings shall be dismissed at the cost of the petitioners. Sec. 1379—17 provides that the commissioners shall not be confined to the point of commencement, route, or terminus of the drain or ditch, or the location, plan, or extent of the work as proposed by the petitioners, but shall locate, designate, lay out, and plan the same in such manner as to them shall seem best designed to promote the public health and welfare and to drain or protect the lands of the parties interested with the least damage and greatest benefit. Sec. 1379—18, as amended by ch. 43, Laws of 1901, relates to action and hearing on report of commissioners, and provides that any owner of lands, person, or corporation affected may appear on the day of hearing and remonstrate against the whole or any part of the proposed work, and that such remonstrance shall set forth the objections, whether they go to the jurisdiction of the commissioners or the court, or

whether they rest on any other fact, as that the lands are assessed too high, or too low, or improperly, or that lands are assessed which ought not to be, or that lands should be assessed which are not, or that the plans proposed should be changed, or the boundaries of the district altered, or that the public health or welfare will not be promoted by the proposed work, and provides for a hearing upon the objection. If the court finds that the report requires modification the same may be referred to the commissioners, who may be required to modify in any respect, and, if the finding be against the validity of the proceedings, the same shall be dismissed at the cost of the petitioners. If in favor of the validity of the proceedings, the court, after the report shall have been modified to conform to the findings, or if there be no remonstrance, shall confirm the same, and the order of confirmation shall be final and conclusive, and the proposed work established, subject to the right of appeal to the supreme court. This section further provides that the order of confirmation may at the same or subsequent term be revised, modified, or changed, and that the court may permit the commissioners to file a supplemental report, and, after notice to parties adversely interested, the court may upon hearing make such other order as the case may require.

It is very clear from these provisions of the statute that the order appointing the commissioners is not a final order from which an appeal can be taken, and that the appeal given under sec. 1379—18 is the first appeal contemplated by the statute under these proceedings. The order appointing commissioners does not finally determine or dispose of the proceeding, and under the provisions of the statute above referred to the same may be determined and finally disposed of and the proceeding dismissed upon hearing on the report. So, it is clear from the statute, as well as the decisions of this court, that the order appointing commissioners is not a final order affect-

ing a substantial right from which an appeal will lie. *Kingston v. Kingston,* 124 Wis. 263, 102 N. W. 577, and cases cited.

It is unnecessary to go outside of this state in search of authority upon the subject. What constitutes a final order from which an appeal may be taken is well settled by the decisions of this court. Counsel for appellants rely with apparent confidence upon the decisions of this court, which, they claim, sustain their position that the order is appealable. In *In re Theresa Drainage Dist.* 90 Wis. 301, 63 N. W. 288, the question of appealability of the order was neither raised nor considered. In *Bryant v. Robbins,* 70 Wis. 258, 35 N. W. 545, and 74 Wis. 608, 43 N. W. 507, the appeal was from an order dismissing the petition, and, of course, where the petition was dismissed, the order dismissing it terminated the proceeding, and, so long as it stood, precluded any further steps therein. So, the orders were appealable under the repeated decisions of this court.

We are also cited to decisions holding that orders appointing or refusing to appoint commissioners in condemnation proceedings are appealable, and it is claimed that the appointment of commissioners for the condemnation of lands for the use of railroads, under secs. 1846, 1852, Stats. 1898, are similar to the proceedings here, but it will be seen from an examination of the statutes that such proceedings are quite different. In these proceedings the court determines before the appointment of commissioners the jurisdictional facts which authorize such appointment, and makes no further provision for subsequent consideration or review of these questions, the appeal provided for being from the award made by the commissioners, while in the case before us the statute expressly provides for a review of all matters upon the report of the commissioners, and for an appeal from the order confirming such report. The hearing upon the petition for the appointment of commissioners to condemn lands for railroads.

involves the questions whether the petitioner is entitled to take the lands for railroad purposes, whether it is required for such purposes, and whether it is the intention of the petitioner in good faith to construct the road authorized by its charter, and certain other facts which the statute requires to be established before commissioners can be appointed. All these questions are adjudicated and settled, and are the only questions for adjudication before appeal from the award. The commissioners then proceed without any further action of the court and make their award, from which an appeal may be taken to the circuit court. Upon filing the report in the judgment book, and at any time after the making of such award, the railroad corporation may pay to the clerk of the court for the use of the owners the amounts awarded by the commissioners, and thereupon enter upon, take, and use the lands for the purposes for which they were condemned, and may be put in possession of the same. So, it will be seen that under the railroad condemnation statute the whole matter, including the right to take possession of the property in question, is settled and determined by the order appointing commissioners and payment of award, subject to the right of appeal to the circuit court. The order, therefore, in railroad condemnation proceedings appointing commissioners is clearly a final order affecting a substantial right in a special proceeding.

Nor can we see that *Stone v. Little Yellow Drainage Dist.* 118 Wis. 388, 95 N. W. 405, supports appellants' contention. There the commissioners were appointed, and on January 4, 1900, made and filed their report, and same was confirmed. Afterwards in May, 1901, the court made an order modifying the order of January 4, 1900, and later, on July 18, 1901, on petition previously made and without notice, the court made an order confirming a second assessment and directing that the same fall due in instalments at dates between ten and twenty years thereafter, and authorizing commissioners to

issue interest-bearing bonds. The complaint alleged these pro-
ceedings illegal and beyond the jurisdiction of the court, and
prayed injunction against the commissioners prohibiting them
from taking steps to collect such assessments and from issuing
bonds under the order of the court. What was said in this
case with reference to the right of appeal clearly had refer-
ence to the appeal provided for under sec. 1379—18, Stats.
1898, not to an appeal from the order appointing commis-
sioners. At page 393 of 118 Wis. (95 N. W. 407) this court
said:

"A remedy deemed by the legislators complete for the cor-
rection of any such errors existed in an appeal from the final
order."

We deem further discussion of the question unnecessary.
We hold that the order appealed from is not a final order from
which an appeal can be taken. The fact that the court made
findings of fact and conclusions of law does not improve ap-
pellants' position respecting the right of appeal. *Maynard
v. Greenfield,* 103 Wis. 670, 79 N. W. 407; *Cook v. McComb,*
91 Wis. 445, 65 N. W. 181.

It follows that the order appointing commissioners is not
appealable, and therefore the appeal must be dismissed.

*By the Court.*—It is so ordered.