In re Dancy Drainage District.

*May 10—June 21, 1906.*

*Drainage districts: Refusal to confirm report: Appealable order: Powers of commissioners: Destruction or impairment of navigable waters: Who may object.*

1. In proceedings for the organization of a drainage district the court, under sec. 1379—18, Stats. 1898, as amended by ch. 43, Laws of 1901, refused to confirm the report of the commissioners and condemned the drainage system proposed by them on

the ground that it would impair the navigability of a river and destroy a lake, but refused to dismiss the proceedings, for the reason that it was not shown that there was no other way, not open to such objections, of effecting the drainage in question. *Held*, that the order was "a final order affecting a substantial right," and therefore appealable under subd. 2, sec. 3069, Stats. 1898. DODGE and WINSLOW, JJ., dissent.

2. Secs. 1379—11 to 1379—31, Stats. 1898, relating to the organization and powers of drainage districts, do not authorize the destruction of a navigable lake or the impairment of the navigability of a river.

3. Remonstrants against the work proposed by the commissioners, under said statutes, may make the objection that such work will impair the navigability of a river or destroy a lake.

APPEAL from an order of the circuit court for Marathon county: W. C. SILVERTHORN, Circuit Judge. *Affirmed.*

It appears from the record and is undisputed that the adult owners of a large portion of the premises in controversy filed their petition for the organization of the "Dancy Drainage District" upon about 35,000 acres of land in the counties of Wood, Marathon, and Portage, constituting a large marsh through which the Little Eau Pleine river, a navigable stream rising near the boundary line between Clark and Marathon counties, runs in a southeasterly direction, emptying into the Wisconsin river a short distance beyond the territory described. After due service and publication, certain residents appeared to contest the same, and by due proceedings the court found in effect: (1) That the petition has been signed by a majority of the owners of land within said proposed district who are of lawful age and who represent one third in area of the lands proposed to be affected by said work, and also contains the signatures of the owners of more than one half of said lands; (2) that the proposed drain is necessary and will be useful for the drainage of the lands proposed to be drained thereby; (3) that both the public health and the public welfare will be promoted by the construction of said drain. The court thereupon and on February 19, 1904, ap-

pointed three commissioners, one from each county, each of whom was a landowner in said district. Said commissioners duly qualified, and on July 19, 1904, duly filed their report, finding the probable cost of the work with incidental expenses to be $161,274.91, and the probable cost of keeping the drain in repair two per cent. thereof, and the probable benefits to be derived therefrom $500,508.81, making the cost less than one third of such benefits. The report revises the boundaries according to the information obtained from their survey, and assessed the benefits upon the lands included, and also assessed damages to a sawmill property, whose dam would have to be removed, at $5,000, and assessed benefits to the munici-palities to be benefited thereby and also benefits to the railway company, and further reported that no lands outside of the district would be damaged, and none within the district other than those specified.

Upon such report due service was made of a notice of motion returnable August 20, 1904, for the confirmation thereof and organization of the district. At such date certain persons interested filed protests against the organization of the district, assigning as grounds therefor that the petitioners did not constitute the requisite number of owners; that some signatures were obtained by misrepresentation; that the proposed work is not feasible or necessary or useful; and that the public health and welfare will not be promoted thereby. Further, that the Little Eau Pleine river, a navigable stream used to float and drive logs to a sawmill thereon, and a freshwater lake, known as Rice Lake, within the limits thereof, will be destroyed, whether the outlet chosen should be the one here proposed or any other. Three of the four towns assessed for benefits protested, stating, in addition to the foregoing grounds, the claim that those municipalities would not be benefited. The *Chicago, Milwaukee & St. Paul Railway Company* protested, assigning the additional ground that it owns a right of way across a portion of the lands in the district with

which a drainage district has no power to interfere, and that the assessment against it was also unauthorized, and asks that the boundary be so modified as not to interfere with its property and an issue be framed as to its damages.   The *Grand Rapids Lumber Company* also protested, assigning, in addition to the foregoing grounds, that the commissioners were disqualified for the position because of interest; that the cost of the construction will exceed the benefits; that the method of assessment of the benefits is arbitrary, unjust, and inequitable.

The report of the commissioners and the objections thereto having come on to be heard on the day fixed for that purpose by the court, and the court having fixed a time and place for the hearing and trial of all issues of law and fact thereby raised, and after hearing all the evidence and arguments of counsel, the court found as matters of fact, in effect: (1) That each of the commissioners heretofore appointed was when appointed, and still is, competent within the meaning of the statute and qualified to hold the position of commissioner. (2) That each and all of said commissioners in their acts and conduct in performing the duties of said office have acted fairly, honestly, impartially, and with good judgment and ability, and there is nothing in their conduct or that of any of them for criticism.   (3) That those portions of the Little Eau Pleine river included within the boundaries of the proposed drainage district constitute a navigable stream of the state of Wisconsin.   (4) That the body of water known and shown on the map annexed to the commissioners' report as Rice Lake is a part of said stream and co-existent with it and is a part of the permanent inland waters of the state. (5) That the drainage district contemplated by the commissioners' report will materially affect and to some extent impair the natural use of the Eau Pleine river for some purposes of navigation, to wit, the holding of logs for manufacturing purposes within its bayous and parts of the stream, the

:same being one of the navigable uses of the stream. While it has not been established that such system will seriously affect the mere driving of logs down the stream, it nevertheless will seriously affect the floatage of logs within its waters and the holding of them for the purposes of manufacture, and will thus directly impair the navigability of the river for some lumbering purposes. (6) The drainage system contemplated by the commissioners' report will destroy and wipe out of existence the body of water shown and designated on the map as Rice Lake, excepting only as the drainage channel through the same may still continue to exist as a part of the Little Eau Pleine river. (7) That because the proposed drainage system will thus impair the navigability of the Little Eau Pleine river and remove the waters from Rice Lake, the power to do which does not exist in the commissioners and is beyond the power of the court to grant to them, therefore such proposed drainage system cannot be made effective so as to accomplish the object sought and cannot be confirmed by the court. (8) That it was not shown with reasonable certainty that there is no other way of effecting this drainage in some manner not interfering with the rights of navigation and commerce on the Eau Pleine river and Rice Lake, and therefore the proceedings should not be dismissed, but the commissioners retained in office for consideration of the question whether the commissioners shall amend or supplement their report by stating whether some other method can be found which will result in effective drainage and not be open to the foregoing objections to this proposed plan.

As conclusions of law the court found, in effect, that the motion of the petitioners to confirm the report of the commissioners must be denied; that the motion of the objectors to dismiss the entire proceedings must be denied; and that the motion of the objectors to dismiss and annul all acts and proceedings including and subsequent to the order appointing the commissioners must be denied. An order was entered ac-

cordingly.   The commissioners and the petitioners appeal from that part of the order which refused to confirm the report of the commissioners.

For the appellants there was a brief by *Goggins & Brazeau* and *Kreutzer, Bird & Rosenberry,* and oral argument by *B. R. Goggins* and *C. B. Bird.*   They contended, *inter alia,* that no landowner on the so-called Rice Lake is objecting to the work on the ground that the lake will be destroyed.   Instead, such owners are petitioners.   No riparian owner of the log-storing bayous of the river is protesting against injury to his property.   If he were, his damage could be compensated.   The protestants simply assert the general public interest in a navigable stream, but no special injuries to any objector.   It has been adjudged in this proceeding that the public welfare will be promoted, not injured, by this drainage.   The objectors have no more standing in court to urge this objection than has a citizen with no special damage to claim abatement of a public nuisance.   *Clark v. C. & N. W. R. Co.* 70 Wis. 593. They may complain to the public authorities and seek leave to sue in the name of the public to prevent this wiping out of a few bayous in a little stream of log-driving navigability in a community fast graduating from logs to farms.   The public officer will then use his discretion, in view of all the public interests involved.   Until this question is raised in the name of the general public it is not before the court.   Objectors cannot urge it on their own motion.   *State ex rel. Att'y Gen. v. Cunningham,* 81 Wis. 440, 487.   But, if presented, is this an objection to this drainage?   The court will take judicial notice of the general character of this stream, the extent of its navigability, etc.   *State v. Carpenter,* 68 Wis. 165, 171; *The Montello,* 11 Wall. 411.   The only claim made for it is that limited navigability for log driving.   Such streams are in a class by themselves, and, subject to that right of log driving, may be dammed or otherwise improved without legislative authority, as generally navigable waters may not.   *Charn-*

*ley v. Shawano W. P. & R. I. Co.* 109 Wis. 563, 569; *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* 74 Wis. 652. It is not a navigable stream of the United States. *Morse v. Home Ins. Co.* 30 Wis. 496, 505. But, if it were, the United States having assumed no jurisdiction over it, the control of the state is plenary and it may change or modify at will. *Montgomery v. Portland,* 190 U. S. 89; *Falls Mfg. Co. v. Oconto R. I. Co.* 87 Wis. 134, 151. Our constitutional provision (art. IX, sec. 1), taken from art. IV of the Ordinance of 1787, that "the navigable waters . . . shall be common highways, and forever free," refers only to political regulations and not to physical disturbances. *Falls Mfg. Co. v. Oconto R. I. Co.* 87 Wis. 134, 152; *J. S. Keator L. Co. v. St. Croix B. Co.* 72 Wis. 62; *Willamette I. B. Co. v. Hatch,* 125 U. S. 1. The state may, in aid of navigation, change, deepen, divert, or close up navigable streams without making compensation for property rights damaged thereby. *Falls Mfg. Co. v. Oconto R. I. Co.* 87 Wis. 134, 150, 151, and cases cited; *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 90 Wis. 370, 400. For a private purpose, it cannot do so even with compensation. Id. 399. But for a public purpose other than navigation it may, upon making compensation. *Donnelly v. Decker,* 58 Wis. 461, 465; *Smith v. Rochester,* 92 N. Y. 463; Gould, Waters, § 248. Since the legislature has the power to so change streams, and has provided in general terms for these drainage projects, which in most cases must change some stream, it would seem a necessary grant of power results, even if there were no express declaration to that effect. Express grants, even of limited power, do not restrict general inherent authority, though not expressly granted. *Farmers' & M. Bank v. D. & M. R. Co.* 17 Wis. 372; *State v. Wettstein,* 64 Wis. 234. The court will look to the whole act and its apparent purpose to determine the extent of the power given. *Wis. Ind. School v. Clark Co.* 103 Wis. 651. The following cases are to the effect that power to drain streams

or lakes results as an incident of drainage authority: *Sturm v. Kelly,* 120 Mich. 685, 79 N. W. 930; *Hauser v. Burbank,* 117 Mich. 463, 76 N. W. 109; *Strayer v. Taylor,* 163 Ind. 230, 69 N. E. 145; *Dowlan v. Sibley Co.* 36 Minn. 430; *Goodrich v. Stangland,* 155 Ind. 279, 58 N. E. 148; *Lussem v. Sanitary Dist.* 192 Ill. 404, 61 N. E. 548.

For the respondents there was a brief by *Brown, Pradt & Genrich, Park & Carpenter,* and *G. L. Williams,* and oral argument by *L. G. Bohmrich* and *Neal Brown.*

There was a separate brief for the *Chicago, Milwaukee & St. Paul Railway Company* by *Hurley & Jones,* and oral argument by *M. A. Hurley.*

CASSODAY, C. J.  1. The appealability of the portion of the order in question is not challenged nor mentioned in the briefs of counsel.  It was suggested on the argument, but counsel for the respondents requested a decision upon the merits.  Such suggestion was in consequence of the discussion in another case decided herewith.  *In re Horicon Drainage Dist., ante,* p. 42, 108 N. W. 198.  That was an appeal from an order appointing commissioners under sec. 1379—13, Stats. 1898, as amended by sec. 1, ch. 43, Laws of 1901, and it was held that the order was not appealable.  In writing the opinion of the court in that case, my brother KERWIN has given a synopsis of several sections of the statutes for organizing drainage districts, as amended, and pointed out that the only authority therein given to appeal to this court is found in sec. 1379—18, Stats. 1898, as amended by sec. 2, ch. 43, Laws of 1901.  That section relates to the action of the court on the report of the commissioners, and gives the court authority to require a modification of the same and to determine all controversies in the matter, and then, among other things, declares:

"If the finding be against the validity of the proceedings the same shall be dismissed at the cost of the petitioners.  If the finding be in favor of the validity of the proceedings, the

court, after the report shall have been modified to conform to the findings, or if there be no remonstrance, shall confirm the same, and the order of confirmation shall be final and conclusive, the proposed work shall be established and authorized and the proposed assessments approved, subject to the right of appeal to the supreme court."

The court not only refused to confirm the report, but found against the validity of the proceedings, so far as they purported to "destroy and wipe out of existence the body of water shown and designated on the map as Rice Lake," and in so far as the "proposed drainage system" would "impair the navigability of the Little Eau Pleine river." The "drainage system" reported by the commissioners included the destruction of Rice Lake and its navigability, and also the impairment of the navigability of the river running through the same. Such "drainage system" is expressly condemned by the findings of the court, and it is also expressly found that "such proposed drainage system cannot be made effective so as to accomplish the object sought and cannot be confirmed by the court." The statutes seem to contemplate that the findings of the court and the order made thereon shall be final and conclusive, "subject to the right of appeal to" this court. True, the court refused to dismiss the proceedings, on the express ground that "it was not shown with reasonable certainty that there is no other way of effecting this drainage in some manner not interfering with the rights of navigation and commerce on the Eau Pleine river and Rice Lake." But such "other way" would necessarily be a system of drainage not contemplated in the report of the commissioners. The order of the court is final and conclusive as to the drainage system so reported. It is "a final order affecting a substantial right made in special proceedings." Subd. 2, sec. 3069, Stats. 1898. Such an order, "within the meaning of this statute, is one which determines and disposes finally of the proceeding— one which, so long as it stands, precludes any further steps therein." *Kingston v. Kingston,* 124 Wis. 263, 264, 102

N. W. 577. See, also, *Bryant v. Robbins,* 70 Wis. 258, 35 N. W. 545; *S. C.* 74 Wis. 608, 43 N. W. 507; *In re Theresa Drainage Dist.* 90 Wis. 301, 63 N. W. 288; *Stone v. Little Yellow Drainage Dist.* 118 Wis. 388, 95 N. W. 405. We must hold that the order is appealable.

2. The important question presented is whether the trial court was justified in holding that the commissioners, by the "drainage system" so reported, had no power to "destroy and wipe out of existence the body of water shown and designated on the map as Rice Lake," nor to "impair the navigability of the Little Eau Pleine river," and that it was "beyond the power of the court to grant to" such commissioners any such power. Certainly, the statutes providing for the "organization and powers of drainage districts" do not in terms give any such power. Secs. 1379—11 to 1379—31, Stats. 1898, as amended. The broadest power given to the commissioners by these sections is to "do any and all necessary acts in and about the surveying, laying out, constructing, repairing, altering, enlarging, cleaning, protecting and maintaining any drain, ditch, levee or other work for which they shall have been appointed, including all necessary bridges, crossings, embankments, protections, dams and lateral drains, clearing out and removing obstructions from natural or artificial channels or streams within or beyond the limits of the drainage district, procuring, purchasing or condemning, under proceedings similar to the proceedings had on the award of damages hereunder, riparian rights, rights of flowage and water powers, and may use any moneys in their hands arising from assessments for that purpose." Sec. 1379—22, Stats. 1898. One of these sections declares that the provisions of the preceding "sections shall be liberally construed to promote the public health or welfare by reclaiming wet and overflowed lands, building embankments or levees and the preservation of any system of drainage . . . constructed according to law." Sec. 1379—31, Stats. 1898. But there is no mention nor refer-

ence in any of those sections to the destruction of any lake or river, nor to the impairment of the navigation of any lake or river—much less a meandered lake or river. As indicated in numerous adjudications of this court, some of which are cited by counsel for the petitioners, the legislature, in aid of navigation, has power to authorize the deepening and widening of channels, the building of flooding dams, and other structures. *Falls Mfg. Co. v. Oconto River Imp. Co.* 87 Wis. 134, 150, 151, 58 N. W. 257, and cases there cited. To authorize structures in aid of navigation is a very different thing than to authorize the destruction of a navigable lake or to impair the navigability of a river. As indicated, the sections of the statutes cited do not in terms authorize such destruction or impairment. On the contrary, another section of the statutes expressly declares:

"All lakes wholly or partly within this state which have been meandered and returned as navigable by the surveyors employed by the government of the United States or which have been so meandered and are navigable in fact are hereby declared to be navigable and public waters, and all persons shall have the right to pass to and fro, be and remain thereon and have and enjoy all other rights and privileges thereon and thereto to the same extent and with the like effect as in, to, over and upon any other navigable or public waters." Sec. 1607a, Stats. 1898.

It is undisputed that Rice Lake is a meandered body of water and navigable in fact, and it is also undisputed that the Little Eau Pleine river is a navigable stream, which has been used for driving and rafting logs for many years, and that the lake is an enlargement of the river, and that in and upon both the river and the lake fish and game abound. This court has repeatedly held that the title to the bed of a meandered lake navigable in fact "is in the state in trust for legitimate public uses, such as fishing, navigation, and the like;" and that "the state cannot convey it away for private uses, nor can it abdicate the trust." *Att'y Gen. ex rel. Askew v. Smith,* 109 Wis.

532, 539, 85 N. W. 512, and cases there cited.    In one of the cases cited it was held, on the last appeal to this court:

"It is the duty of the legislature to preserve for the benefit of all the people of the state, forever, the enjoyment of the navigable waters within its boundaries.  The navigable waters of the state belong to the state, and the lands under them, in all situations, so far as it is necessary to preserve inviolate the common right to enjoy those incidents which are not the subject of private ownership in navigable waters at common law."  *Priewe v. Wis. State L. & I. Co.* 93 Wis. 534, 67 N. W. 918; *S. C.* 103 Wis. 537, 549, 550, 79 N. W. 780. See, also, *Rossmiller v. State,* 114 Wis. 169, 186, 187, 89 N. W. 839.

The statutes and adjudications cited certainly justified the trial court in refusing to confirm the report of the commissioners.    Counsel claim that the respondents have no such special interest in the lake or river as to authorize them to make the objection.    They are certainly parties, and necessary parties, to the proceedings.    The petitioners and commissioners have the affirmative and are seeking to invade the rights intrusted to the state.    The respondents have as much right to object as they have to proceed.    This court has held:

"An attempt by any person or corporation to violate public rights in the navigable waters of the state, to the special injury of a particular person, may be restrained by a private action."  *Priewe v. Wis. State L. & I. Co.* 103 Wis. 537, 79 N. W. 780.

So it has held:

"A wrongful invasion of the right to use land for fishing and hunting is actionable, regardless of the amount of the damages caused by such invasion. . Every wrongful intrusion by one person upon the legal rights of another is both an injury and a damage and is a proper subject for legal redress." *Diana S. Club v. Lamoreux,* 114 Wis. 44, 45, 89 N. W. 880.

We find no error in the record of which the appellants can rightfully complain.

*By the Court.*—The portion of the order of the circuit court appealed from is affirmed.

DODGE, J. (*dissenting*).  I am constrained to dissent from the judgment of affirmance in this proceeding, because it is obvious that this court has no jurisdiction by appeal to review the order entered in the court below.  The right of appeal essential to give us jurisdiction in such matters is purely statutory.  *Maxon v. Gates,* 118 Wis. 238, 95 N. W. 92.  The only appeal authorized is, generally, in special proceedings, by subd. 2, sec. 3069, Stats. 1898, from "a final order affecting a substantial right made in special proceedings."  I have no doubt whatever that upon the coming in of the commissioners' report in a drainage proceeding, under sec. 1379—11 to sec. 1379—18, Stats. 1898, if an order is made either confirming the report and establishing the drainage district or dismissing the proceeding, such order is final and affects a substantial right.  In the language of *Kingston v. Kingston,* 124 Wis. 263, 102 N. W. 577, it "determines and disposes finally of the proceeding—one which, so long as it stands, precludes any further steps therein."  This I understand to be in accord with the view taken in *In re Horicon Drainage Dist., ante,* p. 42, 108 N. W. 198.  The difficulty is, however, that the present order does neither.  It refuses to confirm the report, and therefore the drainage district is not yet established; but it also refuses to dismiss the proceedings, upon the ground, as stated by the court, that he is not convinced that some modification of the plan reported by the commissioners is not possible so as to obviate the objections he now finds to the establishment of a drainage district in general pursuance of the policy of the petition filed.  The statute (sec. 1379—18) seems to contemplate that such a situation may arise, and then expressly authorizes the court to again refer the matter to the commissioners, who may modify their report in any respect.  This situation seems to me identical with one where, before proceeding to judgment, the court has declared that either the pleadings or the evidence will not support a judgment in accordance with the complaint, but that, before enter-

ing judgment, the parties may have opportunity to amend the pleadings or add to the evidence. In such case, obviously, the time of final adjudication would not have arrived. The consideration that the reasons advanced by the court, when and if carried into final order, would be conclusive against the petitioners, has no bearing upon the right of appeal, which is given not from the decision, but from the final order. *Nevil v. Clifford,* 51 Wis. 483, 8 N. W. 296; *Maynard v. Greenfield,* 103 Wis. 670, 79 N. W. 407; *Sutton v. C., St. P., M. & O. R. Co.* 114 Wis. 647, 91 N. W. 121; *Land & S. Co. v. South Milwaukee,* 127 Wis. 284, 106 N. W. 850. Other cases which seem to me to refute the appealability of this order are: *In re Schumaker,* 90 Wis. 488, 63 N. W. 1050; *Cook v. McComb,* 91 Wis. 445, 65 N. W. 181; *Johns v. N. W. Mut. R. Asso.* 94 Wis. 431, 69 N. W. 160. When our mandate of affirmance shall have gone down to the trial court, there will, to my mind, still exist there a proceeding which may go on for years and finally terminate in an order either establishing a drainage district in pursuance of the present petition or dismissing the proceedings, and from which either party in interest will then have a right to appeal.

A suggestion was made at bar that, since an order dismissing the proceeding would be appealable, an order refusing to dismiss, being the converse ruling of the court upon the same motion, ought to be. This reasoning has been repudiated in many analogous cases. The order of dismissal terminates the proceeding and is final; the order refusing to dismiss perpetuates it, and is not final. *Moyer v. Koontz,* 103 Wis. 22, 79 N. W. 50; *Welsher v. Libby,* 106 Wis. 291, 82 N. W. 143; *Benolkin v. Guthrie,* 111 Wis. 554, 87 N. W. 466. Perusal of the opinion fails to make entirely clear to my mind whether the decision is based upon want of power in the legislature to destroy a navigable body of water when public health or welfare demands, or merely upon absence of clear and unambiguous delegation of such power to drainage districts. I pre-

sume the latter ground only is intended to be declared, since I did not understand that a majority, if any, of the members of the court expressed opinions in favor of the former. I am not prepared to hold that the legislature has not power to abate a public nuisance, a menace to public health, merely because navigable or fishable. Doubtless the purpose to delegate so high a power to any inferior tribunal is to be inferred only from the most unambiguous expression. *Winchell v. Waukesha,* 110 Wis. 101, 108, 85 N. W. 668. I agree fully that the statute under consideration contains none such.

WINSLOW, J. I concur in the views expressed by Mr. Justice DODGE.