IN RE HORICON DRAINAGE DISTRICT: APPEAL OF ROTTENBERGER and others.

*April 3—September 29, 1908.*

*Drainage districts: Appealable orders: Proceedings continued under subsequent statute: Navigable waters: Rock river: Protection: Impairment: Riparian rights, etc.: Artificial pond or enlargement of river.*

1. Under sec. 1379—17, Stats. (Supp. 1906; Laws of 1905, ch. 419, sec. 7), an order confirming the preliminary report of drainage commissioners is appealable.

2. Where proceedings to establish a drainage district had not been completed at the time of the enactment of ch. 419, Laws of 1905, it was proper, under sec. 35 of that act (sec. 1379—31*n*, Stats.: Supp. 1906), for the court to order that the further proceedings be had thereunder. Sec. 45 (sec. 1379—32*b*) is not applicable.

3. It is the policy of this court scrupulously to protect the navigable waters of the state from impairment.

4. Rock river is navigable in law and a public river of the state up to township 14, range 15. *State v. Carpenter*, 65 Wis. 165, limited and distinguished.

5. All waters declared navigable by act of the legislature must be regarded as navigable waters of the state and not subject to impairment under the drainage laws, at least in the absence of express legislative authority conferred upon the drainage commissioners in plain and unambiguous terms.

6. The "riparian rights, rights of flowage, and water powers" which, under sec. 1379—28, Stats. (Supp. 1906; Laws of 1905, ch. 419, sec. 18), may be taken under drainage proceedings, have reference to private rights and do not include rights of the public in navigable streams.

7. A pond or enlargement of a navigable river, created by a dam built across the river by authority of law, being at some seasons of the year several feet deep in places and capable of floating small craft and having existed in that condition for more than forty years, must be deemed a part of the navigable river, and drainage commissioners have no power, under existing laws at least, to destroy it.

MARSHALL and SIEBECKER, JJ., concurring, are of the opinion that, the artificial condition of the pond having become, in a legal sense, a natural condition and the title to its bed having passed to the state in trust for public purposes incident to navigable waters at common law, nothing should be said which might be construed as suggesting the existence of any power in the legislature to authorize the destruction of such pond.

BASHFORD and TIMLIN, JJ., dissenting, are of the opinion that neither the Rock river at the place in question nor the mill pond is navigable in fact, and that mere legal or artificial navigability is not sufficient to defeat the beneficent purposes of the drainage statutes.

APPEAL from an order of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Reversed.*

This is an appeal from an order in a proceeding to estab-

lish a drainage district in certain towns in Dodge county.
The case was here before on appeal from an order appoint-
ing commissioners (*In re Horicon D. Dist.* 129 Wis. 42, 108
N. W. 198), which order was made before the passage of
ch. 419, Laws of 1905 (secs. 1379—11 to 1379—32*b*,
Stats.: Supp. 1906). After the proceeding was remanded
the court ordered that further proceedings be had under ch.
419, Laws of 1905, and that the commissioners make a fur-
ther report to the court as directed by the order. The com-
missioners made and filed such report, which was confirmed,
and this appeal is from the order of confirmation.

In the order appealed from the court found, among other
things, that the benefits from the works proposed by the com-
missioners will exceed the damages and cost of construction;
that the proposed work will not affect the public health; that
said proposed work will promote the public welfare; that in
1837 Rock river, which flows through the proposed drainage
territory, was meandered by the surveyors of the United
States government; that the Hustisford pond was created by
the erection of a dam across Rock river at Hustisford, which
caused the banks of said river to overflow, thereby creating a
reservoir of water for hydraulic purposes, and that said mill
pond has been maintained by the owners and those inter-
ested in water power, and that it was built pursuant to an
act of the council and house of representatives of the terri-
tory of Wisconsin for the year 1845; "that no part of Rock
river within said district is in fact navigable or has ever
been navigable or used for any of the purposes of com-
merce."

The court further ordered that the reports of the commis-
sioners be confirmed in all respects, and directed that the
commissioners proceed with the work, and ordered the
boundaries proposed in the reports fixed and approved as the
boundaries of the drainage district established, and that such
district be organized under the name of "the Horicon drain-

age district." The remonstrants filed exceptions to the findings and order of the court.

The appellants assign the following errors: (1) The court erred in ordering further proceedings to be had under ch. 419, Laws of 1905. (2) The court erred in finding that the drainage scheme will promote public welfare. (3) The court erred in confirming the reports, because the drainage laws do not contemplate or authorize such an unreasonable exercise of police powers. (4) The court erred in finding that no part of Rock river is in fact navigable or has ever been navigable or used for any of the purposes of commerce. (5) The court erred in finding that Hustisford Lake was not a navigable lake and was not to all intents and purposes a natural lake.

For the appellants there were briefs by *Lamoreux & Husting,* and oral argument by *C. A. Lamoreux, Paul O. Husting,* and *M. E. Burke.*

*J. E. Malone,* for the respondent petitioners.

*C. E. Hooker,* for the respondent commissioners.

The following opinion was filed April 17, 1908:

KERWIN, J. 1. Counsel for respondents claim that the appeal should be dismissed on the ground that the order is not appealable. As we understand their contention, it is based largely upon the assumption that the drainage law, secs. 1379—11 to 1379—32b, Stats. (Supp. 1906; Laws of 1905, ch. 419), does not contemplate or authorize an appeal from the order confirming the preliminary report, and that such order is not one of the appealable orders provided for in sec. 3069, Stats. (1898), relating to appeals from orders. The principal argument seems to be that the appeal is not given by sec. 3069, Stats. (1898). We fully agree with counsel that the appeal is not given by force of sec. 3069, Stats. (1898), but we think it is given by the special provisions of the drainage law. It is said by counsel that by

consulting sec. 8, ch. 419, Laws of 1905, it will be found provision is there made for another report; hence the order confirming the preliminary report provided for in sec. 7 is not appealable. This would undoubtedly be true under the decisions of this court if no appeal were given from the order confirming the preliminary report. Such was the effect of our decision on the former appeal in this case. We held that there being no authority in the drainage act for appeal from the order appointing commissioners, and the order not coming within the general class of orders made appealable by sec. 3069, Stats. (1898), it was not appealable. *In re Horicon D. Dist.* 129 Wis. 42, 108 N. W. 198. It is true, as insisted by counsel, the right of appeal from orders is statutory, but here the statute (sec. 7, ch. 419, Laws of 1905) expressly provides for an appeal from the order confirming the preliminary report, and provides that the findings and order shall be final and conclusive unless appealed from to the supreme court within thirty days after filing thereof. So under the express provisions of the statute we see no escape from the conclusion that the order is appealable.

2. We think no error was committed in ordering further proceedings to be had under ch. 419, Laws of 1905. True, the petition was filed under the law as it stood prior to the passage of said ch. 419. Under the express provisions of this chapter, however, where the proceedings to establish a drainage district have not been completed, they may be carried on to completion under the new law in case the court shall so order. In the case before us the court did so order after the passage of the new law. Sec. 35, ch. 419, Laws of 1905, provides, in substance, that where drainage districts are in process of organization under the statutes "as they have heretofore existed," said organization shall be perfected under the laws as they theretofore existed, unless the court otherwise orders; but after said organization is complete and corporate authority acquired all further proceedings shall

be had under such act where there is any section of the act to apply to such proceedings. Appellants lay considerable stress on the provision found in sec. 45, which is as follows:

"Where any suit or proceeding shall be pending to determine the validity of any proceeding heretofore had, or which shall have been prosecuted to judgment adverse to such proceedings under the provisions of the statutes in this section mentioned, the provisions of this act shall not apply or in any way affect."

But it will be seen by reading the whole section that this has no application to proceedings to establish drainage districts while in process of organization. We understand there is no dispute but that the proceedings taken after the determination of the appeal to this court were carried on under ch. 419, Laws of 1905, by order of the court, and we think properly so.

3. The fourth assignment of error, to the effect that the court erred in finding that no part of Rock river is in fact navigable, is the important question on this appeal. That Rock river is a navigable stream in so far as the question of navigability is here concerned must be regarded as settled by legislation, state and national, and the decisions of this court. Ordinance of 1787, art. 4; Local Acts Wis. 1839, No. 49, sec. 4 (p. 99); sec. 1607, Stats. (1898); *Wood v. Hustis,* 17 Wis. 416; *Willow River Club v. Wade,* 100 Wis. 86, 111, 76 N. W. 273; *Smith v. Youmans,* 96 Wis. 103, 70 N. W. 1115; *Pewaukee v. Savoy,* 103 Wis. 271, 79 N. W. 436; *Rossmiller v. State,* 114 Wis. 169, 89 N. W. 839; *Diana S. Club v. Lamoreux,* 114 Wis. 44, 54, 89 N. W. 880; *In re Dancy D. Dist.* 129 Wis. 129, 108 N. W. 202. It is established that Rock river was meandered by the United States government surveys as far north as the north line of township 11 north, range 16 east, and by our statute (sec. 1607) declared navigable up to township 14, range 15, but

it is argued that the Local Acts of Wisconsin of 1839, before referred to, do not declare Rock river navigable, but provide:

"The Rock river is hereby declared to be a public highway and forever free for the passage of boats, barges, canoes, rafts, or other crafts capable of navigating said river, as high up said river as township 14 in range 15."

This is a declaration that the river is navigable, and so held by this court in *Wood v. Hustis,* 17 Wis. 416.  Considerable stress is placed on *State v. Carpenter,* 68 Wis. 165, 31 N. W. 730, but that case recognizes the navigability of Rock river under the Ordinance of 1787, the constitution, and many laws of the state, and says:

"This court is bound to take judicial knowledge that it is a navigable stream and public river of this state; and that it is unlawful to obstruct it there can be no question.  The public and all persons have the right to its free and unobstructed use for the purposes of navigation at all times and under all circumstances."

There is in the opinion, however, other language tending to convey the idea that, although the river had been at an early date navigable in fact, it had ceased at the point in question to be practically navigable.  When, however, the opinion is confined to the facts of the case, it will be found inapplicable here.  We do not regard it necessary to go into the question of whether Rock river is in fact navigable.  It was declared navigable by legislative authority; therefore must be treated as one of the navigable streams of the state in carrying out the provisions of the drainage law.  The policy of the legislature of this state has been to preserve navigable waters of the state from impairment, and this court has held it the duty of the legislature to do so.  *In re Horicon D. Dist.* 129 Wis. 42, 108 N. W. 198, and cases cited.  So, in view of the history of legislation upon the subject, we think it plain that all waters declared navigable by act of the legislature must be regarded navigable waters of

the state and not subject to impairment under the drainage laws, at least in the absence of express authority conferred upon the drainage commissioners, if, indeed, the legislature has power to confer authority to impair navigable waters or the common-law incidents of navigation. The policy of this court as shown by a long line of decisions has been to scrupulously protect the navigable waters of the state from impairment. *Ne-pee-nauk Club v. Wilson,* 96 Wis. 290, 71 N. W. 661; *Willow River Club v. Wade,* 100 Wis. 86, 111, 76 N. W. 273; *Mendota Club v. Anderson,* 101 Wis. 479, 78 N. W. 185; *Pewaukee v. Savoy,* 103 Wis. 271, 79 N. W. 436; *Rossmiller v. State,* 114 Wis. 169, 89 N. W. 839. If it were necessary to go into the question of whether Rock river is in fact navigable, we think it would be difficult to sustain the finding of the court below to the effect that it is not, upon the facts established and the repeated decisions of this court. But we shall not review the evidence or consider that question, since we are of opinion that Rock river is navigable in law.

Having determined that Rock river is navigable, the next question is, Does the drainage law authorize its impairment? The power conferred upon drainage commissioners under sec. 1379—22, Stats. (1898), was the same as the power given them under sec. 18, ch. 419, Laws of 1905. And it will be seen that no authority is conferred upon them to appropriate or impair navigable waters under such law. If the legislature has the power in any case to authorize the commissioners to appropriate or impair navigable waters, the authority must be conferred in the most plain and unambiguous terms. *Winchell v. Waukesha,* 110 Wis. 101, 108, 85 N. W. 668. No express authority is given to appropriate navigable waters, but it is argued that the authority contained in sec. 18, ch. 419, Laws of 1905, to the effect that "riparian rights, rights of flowage and water powers" may be taken under the drainage proceedings, affords authority

for respondents' contention here.   But we think it clear that riparian rights, rights of flowage, and water powers referred to have reference to private rights, and not rights of the public in navigable streams.

The proposed scheme of drainage embraced within the limits ordered contemplates the destruction of Hustisford dam, built across Rock river by authority of law more than forty years ago, and which has since maintained a pond or enlargement of the river covering a large tract of land, and which pond at some seasons of the year is covered with several feet of water at some places and capable of floating small craft.   The court below found that no natural lake or pond existed within the limits of the drainage district established by the order, because, while the river was meandered by public authority, the pond had not been, and that the meandered limits of the river did not show a lake or pond.   As before observed, however, it is established that this lake, pond, body of water, or enlargement of the river (we do not think it material which) existed for more than forty years before this proceeding was commenced and was during that time and is a part of Rock river.   By the proposed scheme it will become necessary to destroy it and decrease the volume of water in the river and otherwise materially alter the physical condition of the river, and impair, if not destroy, many of the common-law incidents of navigation.   This, we think, the commissioners, under existing laws at least, have no power to do.   *Willow River Club v. Wade,* 100 Wis. 86, 111, 76 N. W. 273; *Rossmiller v. State,* 114 Wis. 169, 89 N. W. 839; *Pewaukee v. Savoy,* 103 Wis. 271, 79 N. W. 436; *Mendota Club v. Anderson,* 101 Wis. 479, 78 N. W. 185; *Ne-pee-nauk Club v. Wilson,* 96 Wis. 290, 71 N. W. 661; *In re Dancy D. Dist.* 129 Wis. 129, 108 N. W. 202.

Many other questions are discussed with much learning and ability, but in the view we take of the case it is unnec-

essary to consider them.  We hold that Rock river is a navigable stream, and that no authority of law was delegated to the commissioners to impair it or appropriate it to drainage purposes, and that the drainage district ordered will have that effect.  It follows, therefore, that the order appealed from must be reversed.

*By the Court.*—The order of the court below is reversed, and the proceeding remanded with directions to dismiss the petition.

MARSHALL, J. (*concurring*).   I concur in the decision in this case and the opinion so far as it goes, but would be better satisfied if the result were placed on a broader foundation.

There may be some question, though I think it is properly resolved in appellants' favor, as to whether the drainage scheme will injuriously affect the navigability of Rock river proper.   If it be a fact that such scheme would increase the amount of water in the river, the decision would be somewhat illogical.   There can be no question whatever but that the execution of the plan proposed would destroy the artificial expansion of water known as Hustisford Lake, which it appears from the evidence is navigable under the settled law of this state.

Now the artificial condition of the lake having existed for over twenty years—some fifty years in fact,—it has become, in a legal sense, a natural condition.   The body of water is subject to the same rules as those governing lakes such as Lake Winnebago, the lakes around the city of Madison, or any of the well-known navigable lakes of the state.   The title to the bed long ago passed from private to public ownership.   It passed under the great trust vested in the state for public purposes incident to navigable waters at common law, which trust, as it has been said, the state is powerless to abdicate.   *Smith v. Youmans,* 96 Wis. 103, 70 N. W. 1115;

*Mendota Club v. Anderson,* 101 Wis. 479, 78 N. W. 185;
*Pewaukee v. Savoy,* 103 Wis. 271, 79 N. W. 436. That
principle is of inestimable value to the people. It should
be vindicated upon all proper occasions. While the reclama-
tion of waste land is important the preservation of the navi-
gable waters of the state, as a matter of public policy, is of
paramount importance. It were better to create more in-
land bodies of navigable water than to destroy those we have,
even if the right of destruction exist.

This case goes upon the ground that the injurious interfer-
ence with navigable water is, at least, of such doubtful policy
that nothing short of unmistakable language in a legislative
enactment authorizing the same should be held to have been
so intended, and applying that to the law in question no such
intention is expressed. There is no need for going further,
but it is proper to say in passing that whether the legislature
could authorize the destruction of a navigable lake is so very
doubtful that it were better not to say anything liable to be
construed as suggesting the existence of such power. Gen-
erally speaking, a trustee can never rightfully destroy the
subject of the trust even by the consent of the *cestui que
trust* if thereby the dominant purpose of the donor would be
defeated. Why the great trust under which the public wa-
ters of the state are held is not governed by that rule is dif-
ficult to perceive.

The most significant reason in my judgment why the
drainage scheme in question is not legitimate is that it con-
templates the destruction of a navigable lake.

SIEBECKER, J., concurs in the foregoing opinion by MAR-
SHALL, J.

BASHFORD, J. (*dissenting*). I concur in the opinion of
the court that the proceeding was properly continued under
ch. 419, Laws of 1905, and is governed by the provisions of

that act, and that the order before us is appealable under sec. 7 of that act. The drainage scheme can be maintained on the ground that it would promote the public welfare, although the public health is not directly affected. The trial court found upon the evidence that the Rock river within the limits of the drainage district was not navigable. This is a question of fact, and, in the absence of any finding by the trial court, I should reach the same conclusion from the testimony. The trial court also found that the Hustisford mill pond was not navigable, and that finding in my opinion is fully supported by the evidence. I consider mere legal or artificial navigability not sufficient to defeat the beneficent purposes of these drainage statutes.

TIMLIN, J., concurs in the foregoing opinion by BASH-FORD, J.

The respondents moved for a rehearing both in this and in the following case.

In support of the motion there was a brief by *Thomas M. Kearney,* of counsel, *J. E. Malone,* attorney for the petitioners, and *C. E. Hooker,* attorney for the commissioners.

For the appellants, in opposition to the motion, there was a brief by *Lamoreux & Husting.*

The motion was denied September 29, 1908.

For the appellants there were briefs by *Lamoreux & Husting,* and oral argument by *C. A. Lamoreux, P. O. Husting,* and *M. E. Burke.*

*J. E. Malone,* for the respondent petitioners.

*C. E. Hooker,* for the respondent commissioners.