RUNYARD and others, Appellants, vs. OETTING BROTHERS ICE COMPANY, Respondent.

*March 18—April 5, 1910.*

*Navigable waters: Drainage laws: Lowering level of meandered lake.*

1. Ch. 64, Laws of 1871, authorizing the draining of marsh, swamp, or overflowed land, etc., did not authorize the construction of a ditch which would lower the level of a meandered lake, navigable under sec. 1596, Stats. (1898).
2. Property owners upon a navigable lake have the right to have the natural level maintained, and also to have the assistance of a court of equity, if necessary, to accomplish that end.

APPEAL from a judgment of the circuit court for Kenosha county: GEO. W. BURNELL, Judge. *Affirmed.*

This is an action in equity by owners of certain lowlands in the vicinity of Camp Lake, Kenosha county, to restrain the defendant from maintaining a dam across a certain ditch which extends from said Camp Lake to Channel Lake in Lake county, Illinois. The defendant, a corporation owning lands bordering on said Camp Lake, seeks by counterclaim to restrain the plaintiffs from interfering with said dam. The action was tried by the court. The facts as found by the court were in substance as follows:

Camp Lake is a shallow, meandered lake in the town of

Salem, Kenosha county, some hundreds of acres in extent, which prior to 1874 was drained by a small natural stream of water flowing from the south side of the lake in a southerly direction and finally emptying into Channel Lake aforesaid. The land on the south side of Camp Lake and for some distance southerly is low and swampy, and the plaintiffs own a considerable part of this swampy land, the land of the plaintiffs *Faulkner* and *Schreck* bordering on the lake. The defendant since 1898 has been the owner of a parcel of land fronting on the lake, on which it operates large icehouses and a summer resort hotel, both of which owe their special value to the proximity of the lake. In 1874 proceedings were begun, by the filing of a petition with the supervisors of the town of Salem, to open and establish an artificial ditch running south to the state line and there connecting with another ditch in Illinois, the object of the proceeding being, as stated in the petition, to drain the wet and marsh lands contiguous to Camp Lake and improve the public highway contiguous to said wet and marsh lands. A hearing was had on the petition, assessments of benefits were made, and the supervisors made an order by which it was determined "to establish said ditch, drain, or watercourse, if it shall appear practical after being surveyed." No further or other order appears in the town records; but a survey and plat of the ditch was made, and the ditch, about twelve feet wide, from the lake to the state line, was dug by contract during the year 1874, and resulted in lowering the lake from fifteen to eighteen inches below its natural level. No further work was done on the ditch, except an occasional pulling of weeds and some minor work on the south end, until 1901.

Within six to eight years after the first digging in 1874 the ditch was so far filled up by the washing in of dirt and growth of vegetation that the water in the lake was restored to substantially its former level. In 1901 certain of the plaintiffs employed two men to clean out the ditch. These

men not only cleaned out the old ditch, but dug out twelve to eighteen inches of clay from the bottom for a considerable distance, which was an entirely new digging and would have lowered the lake to that extent; but at about the same time the defendant built a concrete dam at the head of the ditch adjoining the lake on the land of one of the plaintiffs, without objection by any one, which, with certain auxiliary dams built a little further south, kept the water of the lake up to its natural level until the year 1906, when some person blew up the concrete dam, with the knowledge and consent of some or all of the plaintiffs. The effect of this was to lower the water in the lake some three feet, leaving the defendant's icehouse and other buildings far away from the water. The effect of the maintenance of the ditch as it was after the removal of the dam would be to destroy the lake as a navigable lake as well as its value for summer resort and ice purposes, and leave a large expanse of the bottom of the lake bare.

From these facts the court concluded that defendant was entitled to judgment directing the plaintiffs to fill the ditch so far as necessary to raise and keep the water in the lake at its natural level, or, in case they fail to do so, that the defendant be permitted to do so at plaintiffs' expense, and that plaintiffs be enjoined from doing any act or thing in the way of the opening or maintenance of the ditch in the future in such manner as to lower said lake. Judgment being entered in accordance with the finding, the plaintiffs appeal.

For the appellants there was a brief by *Peter Fisher* and *Ryan, Merton & Newbury,* and oral argument by *Mr. Fisher* and *Mr. T. E. Ryan.*

*T. W. Spence* and *A. C. Miller,* of counsel, for the respondent.

Winslow, C. J. The findings of fact made by the trial judge are amply sustained by the evidence, and it is not deemed necessary to review them.

A number of interesting legal questions were raised and debated by counsel, both in their briefs and upon the oral argument, but we shall consider but one question, which we deem decisive of the case. Camp Lake was meandered by the government, and hence is to be considered as a navigable body of water. Sec. 1596, Stats. (1898). This court has. very recently held, after full discussion, that drainage laws which authorize the draining of swamp or overflowed lands. for the promotion of the public health or welfare do not authorize the draining away of the waters of the state which have been declared navigable. *In re Horicon D. Dist.* 136 Wis. 227, 116 N. :W. 12. · Whether the legislature has power to pass a law authorizing the draining of such waters was left undetermined in the case just cited, but it was definitely determined that it could not be done under a law which did not purport to authorize anything more than the drainage of swamp lands.

This principle is conclusive in this case. If it be conceded that the ditch proceedings in 1874 were in every way legal, they could not justify the construction of a ditch which would lower the natural level of Camp Lake, because it was a meandered, navigable lake; and ch. 64 of the Laws of 1871, under which the proceeding was instituted, only purported to authorize the draining of marsh, swamp, or overflowed land, or straightening or enlarging a watercourse.

This conclusion relieves us from the consideration of any other questions. Property owners upon this navigable body of water have the right to have the natural level maintained, and also to have the assistance of a court of equity if it be necessary to accomplish that end.

*By the Court.*—Judgment affirmed.