## TOWN OF CABOT v. TOWN OF WASHINGTON.

### Pauper. Removal. Settlement.

An adjudication between two towns fixing the settlement of a pauper, upon an order of removal, is conclusive upon the question of settlement, and precludes, in a subsequent case involving the question of settlement of said pauper's bastard son, any inquiry into facts precedent to such adjudication, as affecting the question as to said pauper's settlement in the latter case.

The bastard minor son of the pauper, having by derivation, at the time of said adjudication, the settlement of his mother, and having gained no other settlement since, necessarily retains the settlement of his mother fixed by said adjudication.

APPEAL from an order of removal of one Nelson F. Rutter and his family, paupers, made on the 22d of February, 1866, ordering them to remove from Cabot to Washington. Trial by the court, September term, 1867, PECK, J., presiding.

An agreed statement of facts was read on trial, and a copy of record of the county court of Orange county; also a record of the warning out of John T. Rutter, and a record of the warning out of Mehitable Rutter, his wife, in 1815. Those records of warning out were introduced by the defendants, and objected to by the plaintiffs; and the court decided that they were invalid, and had no effect to prevent said John T. Rutter's gaining a settlement by residence in Washington, to which the defendants excepted.

Evidence was introduced "as to the time when John T. Rutter and his wife went into Canada, the reason why they went, and how long they staid, and the character of their stay there." It appeared that he and his family went there at the time stated in the

agreed statement, and remained there till 1815, the time stated in the agreed statement, and that their stay in Canada was an actual residence there, permanent in its character ; that while they were there, Canada was their home and domicile, having all. the characteristics of a residence, until their return to Washington in 1815. There was no proof that John T. Rutter had any settlement in Washington till after he returned from Canada, and it appeared that, if he ever had a settlement in Washington, he acquired it his return from Canada at the time above stated.

Several questions of law were raised and discussed on both sides ; and the court decided that the legal settlement of the pauper Nelson F. Rutter was in Washington, and that the paupers were duly removed, to which the defendants excepted. All questions arising upon the facts and proofs, were left open to be raised in the supreme court.

The statement of facts agreed on, is as follows :

" The following facts may be taken as proved upon the part of the plaintiffs, subject to all legal objections : Nelson F. Rutter and his wife Dorothea, mentioned in the appeal papers in this case, were duly and legally married before said order of removal, and Willie Rutter, mentioned in said order, is their legitimate son, and was a minor and living with his parents at the time of said order. The paupers had become chargeable to Cabot at the time of said order. Nelson F. Rutter has not, and never had, any legal settlement in his own right in this state, he being the bastard child of Charlotte Rutter, and born May 3, 1832, in Washington. Said Charlotte Rutter never had any legal settlement in her own right or otherwise in this state, unless she had a derivative one from her father. The father of said Charlotte was John T. Rutter, and said Charlotte always resided in his family until she became of age, in 1830, at which time and a long time before said John T. Rutter had a legal settlement in said Washington, unless prevented by moving out, hereinafter mentioned ; nor did he after 1830 acquire a legal settlement in any other town. In 1852 said Charlotte, then widow of one Chase Smith, lived in Chelsea, Vt.; with her children she had by her husband (Smith), and having become chargeable to said town, an order of removal, in due form of law, was made to remove her and her family from Chelsea to said Washington. An appeal from said order was taken by Washington at the June term, 1852,

of the Orange county court, and at the January term, 1853, said order was affirmed.

"The following facts may be taken as proved on the part of the defendants, subject to all legal objections: John T. Rutter and his wife were American born, and resided in Washington about the year 1807, coming from New Hampshire to Washington. About the year 1807 said John T. Rutter and his family left Washington and went into Canada, and stayed there until 1815. In May, 1815, the wife of said John T. Rutter returned to Washington with her children, and was warned out May 20, 1815. In October, 1815, said John T. Rutter returned from Canada to Washington, to his family, and on the 26th day of October, 1815, said John T. Rutter and his family were warned out. Said John T. resided in Washington at that time about two years. In 1812, while said John T. and his family resided in Canada, said Charlotte was born: that is to say, the 11th of April, 1812. After said Nelson was born, May 31, 1832, said Charlotte continued to reside with her father for about eighteen months, when she left and went to Massachusetts and lived there about two years, leaving said Nelson with her father. At the end of said two years said Charlotte returned to her father's for a short time, he during her absence in Massachusetts having removed from Washington to Goshen gore. After staying at her father's a short time as aforesaid, she from that time to 1840 worked out for a living, in different families in Washington and other towns, and visiting her father as occasion might require. Her father returned from Goshen gore, after a residence there of six years, to Washington. Said Nelson F. Rutter lived with said John T. Rutter until he was sixteen years of age, when he left said John T. and worked about from place to place, and did not reside with said John T. Rutter afterward.

"The question as to the time when John T. Rutter and his wife went into Canada, the reason why they went, and how long they staid, and the character of their stay there, is left open to proof, and the question of the settlement of John T. Rutter in Washington in 1807, is left open to proof. The time John T. Rutter lived in the gore aforesaid, left open for proof."

*Heman A. White* and *Joseph A. Wing*, for the defendants.

*Joseph P. Lamson*, for the plaintiffs.

The opinion of the court was delivered by

BARRETT, J. We find no occasion in this case to revise or dis-

cuss the law of alienage and citizenship as affected by the birth of the pauper's mother in Canada, and the removals and residences of her father in this state and in Canada. The subject has been carefully considered, elaborately discussed, and pretty fully settled in a succession of cases from that of *Lyndon* v. *Danville*, 28 Vt., 809, to that of *Elmore* v. *Calais*, 33 Vt., 468, and, in our apprehension, notwithstanding a little querulous criticism of the learned former Chief Justice in *Westford* v. *Essex*, 31 Vt., 459, and of learned counsel *ad libitum* as the fortunes of professional position may prompt, the law of the subject is settled in this state with definite lines both of principle and application, resting in solid reason, and applicable with reasonable facility to cases as they may arise.

We think the adjudication in the case of *Chelsea* v. *Washington* in 1852, is conclusive upon Washington as to the settlement of the pauper's mother being in Washington. At the time the order in that case was made, the pauper was only some eighteen or nineteen years old. That adjudication precludes in the present case any inquiry into facts precedent to such adjudication, as affecting the question as to her settlement in this case.

The pauper, being her bastard son, had by derivation, at the time of said adjudication, the settlement of his mother. He has not gained any other settlement in his own right. This fixes his settlement in Washington. The cases of *Hartland* v. *Williamstown*, 1 Aikens, 241, *Dorset* v. *Manchester*, 3 Vt., 370, *Stowe* v. *Brookfield*, 26 Vt., 524, leave no open ground for debate upon this aspect of the case, and render of no account the warning out of the pauper's grandparents, in 1815, by the town of Washington.

The judgment is affirmed.