The State ex rel. Atkinson vs. McDonald.

CASSODAY, C. J., took no part.

THE STATE EX REL. ATKINSON, Respondent, vs. McDONALD, Appellant.

*October 12 — October 30, 1900.*

*Title to office: Trial by jury: Eligibility: Residence: Evidence: Naturalization proceedings: Admissions:* Res adjudicata.

On November 18, 1898, appellant became a citizen of the United States by the judgment of a district court of the state of Minnesota rendered on evidence as to his residence in that state to the effect that he had resided there continuously for the year immediately preceding his application; and in September, 1899, pursuant to an appointment to the office of lumber inspector of the Thirteenth district of Wisconsin, then held by the relator, he formally qualified therefor, and thereupon demanded possession of the books and papers of the office, which demand was complied with, the relator supposing appellant to be eligible to the office. Thereafter the relator was informed that appellant was not an elector of the state of Wisconsin, and thereupon he commenced this action to regain possession of the office upon the ground that he was entitled thereto till a person should be appointed and should qualify who was eligible to the position. The cause was tried by the court with a jury. The record of the proceedings of the Minnesota court was received in evidence against a general objection, and was held conclusive upon appellant on the question of his eligibility to the office. *Held:*

The State ex rel. Atkinson vs. McDonald.

1. Proceedings to try the title to an office constitute a civil action in which controverted questions of fact are triable by a jury as a matter of right.

2. The record of the naturalization proceedings was properly received in evidence, (a) as an admission against interest, (b) as a former adjudication as to a material fact, hence binding upon the appellant.

3. The naturalization proceedings were in effect an action *in rem* and the result binding upon the world not only as to the ultimate fact established but the facts upon which such result was based.

4. It appearing conclusively that the adjudication of citizenship by the Minnesota court, as to residence in the state of Minnesota, was based wholly on proof of a year's residence there immediately preceding the making of the application for citizenship, the truth thereof was vital to the conclusion reached, and the decision on that point necessarily became a part of the judgment and is as binding upon appellant as the judgment itself, regardless of whether the federal statute calls for the particular year's residence covered by the proof or not.

5. The conclusiveness of the judgment of the Minnesota court is ruled by the doctrine regarding judgments *in rem* and the rule that the *res adjudicata*, as to a final judicial determination, extends to every proposition assumed or decided by the court upon which the final conclusion is based.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge.  *Affirmed.*

Action to try the title to the office of lumber inspector for the Thirteenth district of the state of Wisconsin. The complaint is to the following effect: The relator was appointed lumber inspector for said district in April, 1897. He immediately qualified for the position according to law, entered upon the performance of its duties, and thereafter continued in such performance till interrupted by the circumstances hereafter stated. In September, 1899, defendant was appointed relator's successor, and, having gone through with the form of qualifying for the office, demanded the books and papers appertaining thereto, whereupon the relator surrendered the same, supposing defendant was eligible for the

position.    Thereafter the relator learned, as the fact was,
that defendant was not an elector of the state of Wisconsin
when he received his appointment and took possession of the
office, but was an elector of the state of Minnesota.    There-
upon the relator demanded of defendant a surrender of the
possession of the office and of the books and papers belong-
ing thereto, which demand was refused.

Defendant answered, joining issue with the allegations to
the effect that he was not eligible to the office of lumber in-
spector.

The cause was tried before a jury.    Plaintiff introduced
in evidence a duly authenticated record of proceedings in
the district court for the Eleventh judicial district of the
state of Minnesota, had November 18, 1898, admitting de-
fendant to United States citizenship.    Such record is to the
effect that defendant applied for admission to United States
citizenship, and that the application was granted on his affi-
davit, corroborated by the affidavits of two other persons,
that for five years prior to the application defendant had
resided in the United States, and that, during the year im-
mediately preceding such application, he had resided con-
tinuously in the state of Minnesota.

Defendant testified, in substance, that he came to the
United States to reside permanently when he was about
twenty-one years of age; that he resided first in Michigan,
then in Minnesota, then in Wisconsin; that he was a deputy
under the surveyor general for the Fifth district of Minnesota
in the winter of 1897–98, and voted in Minnesota once while
a resident there; that he came to the city of Superior in the
early part of 1898 and made his home at the Northern Hotel;
that all of his personal belongings were kept there and that
it was his home till shortly after the commencement of this
action, when he removed to the Wemyss Block in said city;
that he was away from Superior occasionally, including a
two-months visit in the East, but that his home remained as

stated; that his absences were temporary and with the intention of returning; that he was an unmarried man; that he came to Superior and remained as stated, with the intention of making that his home, and that such intention has not changed; that he did not read the affidavits used on his application for citizenship, did not know what they contained, and that they were not true; that he made his declaration of intention to become a citizen of the United States in 1893; that he voted at the state election in 1898 and at the preceding municipal election; that his intention has been, at all times since the spring of 1898, to reside in Wisconsin. On the subject of actual residence in Wisconsin defendant was corroborated by several witnesses.

At the close of the evidence both sides moved the court for the direction of a verdict. Plaintiff's motion was granted and defendant duly excepted. Thereafter defendant moved the court to set aside the verdict and grant a new trial, which was denied, due exception being taken to the ruling. Judgment was rendered against defendant, and he appealed.

For the appellant there was a brief by *Ross, Dwyer & Hile*, and oral argument by *W. D. Dwyer*.

*Victor Linley*, for the respondent.

MARSHALL, J. It is evident that the verdict was directed in plaintiff's favor either on the theory that the record of defendant's application for citizenship was conclusive against him as to his place of residence during the time covered by such record, or that the verdict of the jury, in any event, would be only advisory to the court. Both theories are contended for in support of the judgment.

This is a civil action under sec. 3463, Stats. 1898, and governed thereby and by the established principles respecting such actions. We need not discuss the question of whether, in *quo warranto* proceedings at common law, contested questions of fact were triable by a jury as a matter

of right, or whether the authorities are uniform as regards such being a matter of right under the reformed procedure in Code states where there is no express constitutional or statutory regulation of the subject. There is some conflict of decisions in regard to the matter. 17 Ency. of Pl. & Pr. 479. It is said that it appears to be the general practice to submit all issues of fact, in informations in the nature of *quo warranto*, to a jury, and to proceed in the trial of such actions according to the course of the common law. In states where a civil action has been substituted for the common-law proceeding to try title to an office, it is deemed to be a legal action and within the constitutional guaranty of the right to trial by jury. In *People ex rel. White v. Doesburg*, 16 Mich. 133, it is said that the court has no right to deprive a party of his right to trial by jury where there is an issue of fact in *quo warranto*. In *People v. A. & S. R. Co.* 57 N. Y. 161, the subject received careful consideration, and it was held that an action in the nature of *quo warranto* is one of strict legal cognizance and hence that the parties have a constitutional right to have all issues of fact tried by a jury. The right of trial by jury is clearly recognized by our statutes. Sec. 3464 provides that, " Actions of *quo warranto* and *scire facias* shall be tried at special as well as at general terms of the circuit court, and the court shall have the power to summon a jury for the purpose and prescribe the manner of summoning the same." It is evident that the clause in regard to summoning a jury was added to the statute because of a preceding clause in regard to the trial of such actions at special terms where the statutes do not provide generally for the summoning of jurors. In an action of this kind commenced here, it has been clearly indicated that the right of trial by jury is absolute, and that the action should not be delayed because of the necessity for a jury trial of the issue of fact, by sending the cause to a circuit court, but that a jury should be called in this court. *State ex rel. Att'y Gen. v. Messmore*, 14 Wis. 115.

There is little room for controversy on the subject of whether issues of fact in actions of *quo warranto* are triable as a matter of right by a jury. They are clearly legal actions under the Code, to be tried the same as any other such action, except, on account of the importance of a speedy determination of the controversy, they are triable at a special as well as at general terms, and jurors may be summoned for that purpose when necessary.

The record of the proceedings in the Minnesota court was admissible in evidence, first, upon the general principle that self-disserving admissions may be shown against the party making them, where the subject thereof is in controversy; second, by the rule that a judgment is binding upon parties and privies as to the final result pronounced and the facts established or assumed upon which it is based.

If the evidence were admissible only on the first ground stated, the court was not justified in taking the case from the jury, but if it was admissible on the second ground — and we hold that it was — the evidence was conclusive of the fact in issue, and the direction of the verdict was proper.

There are many cases where persons do not appear of record by name and cannot be heard directly in the action, yet are deemed parties by representation and are bound by the judgment as effectually as those who stand in court to represent them. In such cases all such parties are deemed to be in privity with those who actually appear of record. A judgment against a corporation is conclusive against its stockholders in an action to enforce their statutory liability to creditors. A person suing as a taxpayer, in behalf of himself and all persons similarly situated, stands for all such taxpayers, so that a judgment rendered in the action is binding on every taxpayer in the municipality. A judgment against a municipality is binding on all its taxpayers in a proceeding to collect a tax to satisfy the judgment. Each taxpayer is considered as a participant in the litiga-

tion closed by the judgment, so that he can neither impeach the judgment collaterally nor relitigate any of the questions decided upon which the judgment was based. *Clark v. Wolf*, 29 Iowa, 197; *State ex rel. Wilson v. Rainey*, 74 Mo. 229; *Harmon v. Auditor of Public Accounts*, 123 Ill. 122. A judgment against a trustee is binding on his *cestui que trust*. So is an adjudication by a county court, as to a guardian's or administrator's account, binding on all interested, including the bondsmen. A judgment declaring a person insane and placing him under guardianship is conclusive as to such person's mental status and competency to do business. Many more examples might be given. Such actions are regarded as actions *in rem*. While a judgment in an action *in personam* is binding only on the parties of record and those claiming under them, a judgment *in rem* renders the subject on which it operates " what it declares it to be " and is consequently binding upon the world. Every person is supposed to be concerned in such an adjudication and to be constructively before the court. Such actions, of course, should not be confused with those which concern property, yet only involve personal rights in regard thereto — rights in which the public generally are not interested — such as actions to enforce liens and to reach property by attachment and subject it to payment of the plaintiff's claim. Many examples might be given where the *res* involved, which classified the action as one *in rem*, was the legal status of the person, as, for example, the legal settlement as regards right of public support. *Cabot v. Washington*, 41 Vt. 168. The condition as regards whether married or single. *Hood v. Hood*, 110 Mass. 463; *Smith v. Smith*, 13 Gray, 209; *Pennoyer v. Neff*, 95 U. S. 714.

The rule of *res adjudicata* is as broad, where status is the subject upon which the judgment acts, in that it is binding on the whole world, as it is *inter partes* where mere personal rights are the subject of the litigation. That is well illus-

trated in *Pittsford v. Chittenden*, 58 Vt. 49, where it was held that a judgment determining the settlement of an illegitimate child was conclusive in a subsequent action involving the settlement of the mother, because that was an essential fact in the first proceeding. ' Whatever has been necessarily decided,' said the court in substance, ' in reaching the final result, must stand unimpeached. The controlling facts upon which the former adjudication was rested, though not directly in issue, cannot be reviewed collaterally. They are to be deemed material to the judgment and conclusively settled by it.'

Judgments of naturalization are governed by the same rules. They fix the status of the naturalized person irrevocably, and necessarily include all the facts upon which they are based. Black, Judgments, § 804; *State ex rel. Kickbush v. Hœflinger*, 35 Wis. 393; *Spratt v. Spratt*, 4 Pet. 393; *McCarthy v. Marsh*, 5 N. Y. 263. In such a proceeding every person is regarded as a party actually or constructively. It is no answer to the rule as applied to this case to say that the judgment naturalizing appellant is not conclusive as to his having resided in the state of Minnesota for the year preceding his application, because that particular year's residence was not essential to the judgment; that any year within the five years of residence required within the United States is sufficient. Whether the suggestion that the one year's residence within the state is not required to be the year immediately preceding the application for citizenship is a correct construction of the federal statute, need not be decided in this case. It is sufficient that the record shows that the court pronounced judgment upon evidence establishing one year's residence within the state of Minnesota immediately preceding the application. The truth of that evidence was the turning point in passing upon appellant's application. It was therefore material regardless of whether the particular year's residence covered by the proof was es-

sential or not. The point falls squarely within the rule that every proposition assumed or decided by the court leading up to the final conclusion and upon which such conclusion is based, is as effectually passed upon as the ultimate question which is finally solved. *Brown v. C. & N. W. R. Co.* 102 Wis. 137; *State v. National A. Soc.* 103 Wis. 208; *School Trustees v. Stocker*, 42 N. J. Law, 115.

It follows that the ruling of the trial court, that the Minnesota court, in the application for citizenship, adjudged that the applicant was a resident of that state on November 18, 1898, and that such judgment is conclusive of the same question in this action, is correct. That being the case, obviously appellant was not eligible to the office of lumber inspector when he received the appointment thereto or when he entered upon the duties thereof, and respondent was entitled to hold the office when this action was commenced and when it went to judgment. The verdict was properly directed.

*By the Court.*— The judgment is affirmed.