IN RE TREMPEALEAU DRAINAGE DISTRICT : MERWIN and oth-
   ers, Respondents, vs. HOUGHTON and others, Appellants.

*May 3—June 1, 1911.*

*Drainage: Constitutional law: Conditions authorizing drainage: Ri-
   parian rights: Impairment: Compensation: Navigable waters:
   Changing course of stream: Lakes and ponds: Rights of hunting
   and fishing.*

1. The facts that a large area of low and swampy land known as
   "river bottoms" through which a number of streams flow in
   winding channels bordered by low banks, is completely inun-
   dated at periods of high water, and that in times of low water
   certain sloughs, ponds, or lakes formed by the spreading out or
   enlargement of the channels become entirely separated from
   flowing water, thus creating shallow and stagnant pools, and

Merwin v. Houghton, 146 Wis. 398.

that by a proposed system of drains and dykes such periodical inundations would be prevented and the waters naturally collecting in such area would be drained off, thereby producing a large body of dry and tillable land and preventing insanitary conditions inimical to public health, are sufficient to authorize the organization of a drainage district unless public or private rights will be thereby wrongfully invaded.

2. The rights of riparian owners on navigable waters rest upon the title to the bank and may be condemned for public purposes the same as other property upon payment of a just compensation therefor; and since the object and purposes of drainage are public, there can be no legal objection thereto on the ground that riparian rights are injuriously affected.

3. Whatever damages a riparian owner may suffer as the result of carrying out a drainage enterprise must, under the statute, be included in the assessment of damages for which compensation is to be made, in the same manner as other damages are ascertained and compensated.

4. The evidence in this case is *held* to show that the proposed scheme of drainage will improve navigation by deepening and straightening the channel of a navigable river included within the drainage district and confining the waters within its banks in times of freshets by the use of levees.

5. Ch. 646, Laws of 1907, confers upon drainage commissioners the power to change the natural course of a navigable river if the change will improve its navigability; and the state in its sovereign capacity has the right to grant such authority.

6. The location of a new channel for a river within an area of low-lying marshy lands forming the river bottoms, through any part of which the river might naturally seek its course, is not such a diversion of the river from its natural bed as constitutes a destruction of an existing navigable watercourse, but is an improvement appropriate to promote navigation.

7. Bodies of water formed by the mere widening of the river channel or scooping out of the bottoms, and having no separate existence independent of the river, must be regarded as a part of the river itself, and interference therewith in a drainage proceeding cannot be said to affect inland navigable ponds or lakes.

8. The public rights of navigation and of fishing and hunting both exist in the navigable waters of the state, each independent of the other, and the state holds the title to the beds of such waters in trust for such public purposes. As such trustee for the public the state has the power to so regulate these public uses of navigable waters as to best accomplish and promote the public interests.

9. To constitute a wrongful infringement of the rights of fishing and hunting, by means of a system of drainage, it must appear from the facts and circumstances presented that there is an unauthorized impairment thereof in the light of the duty of the state to regulate other public interests. WINSLOW, C. J., and MARSHALL, J., are of the opinion that the public right of fishing is always subject to the paramount right of the state to improve navigation.

APPEAL from an order of the circuit court for Trempealeau county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

This is a proceeding to secure the drainage of some swamp and marsh lands in the vicinity of the junction of the Trempealeau river with the Mississippi. The district which it is proposed to drain is known as the Trempealeau bottom and comprises about 7,084 acres. It is about six miles long and of varying width up to about three miles. The tract extends along the Mississippi river, and, except for two openings in an embankment on which the main line of the Chicago, Burlington & Quincy Railroad runs, the floodwaters of the Mississippi are excluded from the tract. Along the northerly and easterly boundaries of the district lies the Chicago & Northwestern Railroad line. The Trempealeau river divides near Marshland, a station on the Chicago & Northwestern Railroad line, at about the center of the northeasterly boundary of the tract. One of the branches is called Pine creek. Both streams cross the tract which it is proposed to drain and, reuniting, flow into Trempealeau bay. The Trempealeau river has abandoned part of its original channel and now has a winding and longer channel north and west of the old one. Houghton cree . takes its rise southeast of Marshland and flows south and east over the southeastern part of the proposed drainage district through the low ground between the Chicago & Northwestern Railroad embankment and some high ground south and west of this line of railroad.

It is proposed to effect the drainage of the above described district by closing the openings in the Chicago, Burlington &

Quincy Railroad embankment, thus shutting out the flood-waters of the Mississippi river from the district; by opening a new channel for the Trempealeau river and Pine creek from Marshland to Trempealeau bay, using for the new channel the general course of Houghton creek; and by confining the floodwaters to this new channel by a levee from Marshland to the western end of the strip of high ground south of the new channel and by a levee from the southeastern end of this strip of high ground to Mount Trempealeau at Trempealeau bay. A ditch from the extreme western end of the district to its southeastern limit at Trempealeau bay is to be constructed to drain the whole district.

The commissioners appointed to examine the lands and the plans for their drainage and to report upon the feasibility and necessity of the work recommended that the district be changed by excluding therefrom a small body of land lying at the extreme northwestern end of the district. They believed that the benefits to this small body of land would not exceed the damages. Otherwise the commissioners recommended the prosecution of the work as necessary and of utility, as promotive of the public health, and as furthering the general welfare. They reported that sources of danger to the public health would be removed, that lands now largely valueless would become sanitary in their condition and be made tillable and productive and valuable, and that the benefits would largely exceed the damages.

Remonstrances against the prosecution of the work were filed by owners of lands bordering the proposed new channel for the Trempealeau river, it being alleged that the public health could not be benefited because the district is unsettled; that new burdens would be imposed upon the remonstrants as riparian owners on the new channel; that navigation would not be improved; and that the public rights of fishing and hunting in the navigable waters within the district would be destroyed.

On the hearing before the court upon the remonstrances and the report of the commissioners, there was evidence as to the navigability of Pine creek and the Trempealeau river and of the bodies of water called Wilson, Mud, and Spring lakes, as to the extent of the hunting and fishing in the district, and as to the utility of the lakes, specifically as to ice having been cut at times from Mud lake. The court found from the evidence that the channel of the Trempealeau river had been almost entirely changed from its original bed; that the so-called lakes were merely ponds or sloughs scooped out in the bed of the river by heavy rainfalls or freshets; that they were mere spreads of the river and creek, constituting part of them; that Trempealeau river is meandered and is navigable in ordinary stages of the water for part of the time by small rowboats only; that Pine creek is not meandered, but that it is likewise navigable in ordinary stages of the water; that neither the Trempealeau river nor Pine creek has ever been used for any commercial transportation; that in stages of high water the rivers and lakes are all obliterated and the entire district is flooded and is then navigable with rowboats and hunting skiffs; that Spring lake or slough is meandered, but was not returned as navigable and in fact is not navigable; and that the proposed change in the channel of the Trempealeau river would greatly improve its navigability. The report of the commissioners was approved and the district established as a drainage district.

This is an appeal from the order of the court approving the findings of the commissioners establishing the drainage district and ordering the prosecution of the work.

For the appellants there was a brief by *John C. Gaveney, A. T. Twesme,* and *Frank Winter,* and oral argument by *Mr. Winter.* They contended that the proposed scheme of drainage would result in the destruction of inland navigable waters of the state; that the state has no power to authorize the change of a navigable stream for any other purpose than

to improve navigation; that the state is a trustee in respect to all the navigable waters of the state, holding and regulating the same for the benefit of the public; that the public rights include hunting and fishing as well as navigation; and even granting navigation will be improved, there is no statute which permits destruction of these other rights, nor is it in the power of the state to abrogate its trust in respect thereto. *Donnelly v. Decker,* 58 Wis. 461; *In re Dancy D. Dist.* 129 Wis. 129; *McLennan v. Prentice,* 85 Wis. 427; *Ill. Cent. R. Co. v. Illinois,* 146 U. S. 387; *Willow River Club v. Wade,* 100 Wis. 86; *Priewe v. Wis. S. L. & I. Co.* 103 Wis. 537; *In re Horicon D. Dist.* 136 Wis. 227; *Pewaukee v. Savoy,* 103 Wis. 271; *Rossmiller v. State,* 114 Wis. 169; *Runyard v. Oetting Bros. Ice Co.* 142 Wis. 471; *Johnson v. Eimerman,* 140 Wis. 327; *Ne-pee-nauk Club v. Wilson,* 96 Wis. 290.

For the respondents there was a brief by *W. S. Wadleigh,* attorney for the commissioners, and *Webber & Lees,* attorneys for petitioners, and oral argument by *Mr. Wadleigh* and *Mr. Edward Lees.* They argued that the test of navigability is capacity for use to float the products of the fields and forests to market. *Bolsa L. Co. v. Burdick,* 151 Cal. 254, 90 Pac. 532, 12 L. R. A. n. s. 275; *The Montello,* 20 Wall. 430; *Harrison v. Fite,* 148 Fed. 781; *Toledo Liberal S. Co. v. Erie Shooting Club,* 90 Fed. 680; *Wethersfield v. Humphrey,* 20 Conn. 218; *Groton v. Hurlburt,* 22 Conn. 178; *Schulte v. Warren,* 218 Ill. 108, 75 N. E. 783; *Burroughs v. Whitwam,* 59 Mich. 279, 26 N. W. 491; *Baldwin v. Erie S. Club,* 127 Mich. 659, 87 N. W. 509; *Griffith v. Holman,* 23 Wash. 327, 63 Pac. 239; *Nutter v. Gallagher,* 19 Oreg. 375, 24 Pac. 250; *Morgan v. King,* 35 N. Y. 454, 458; *Brown v. Chadbourne,* 31 Me. 9; *Rowe v. Granite B. Corp.* 21 Pick. 344; *Gaston v. Mace,* 33 W. Va. 14, 10 S. E. 60, 25 Am. St. Rep. 848; *Neaderhouser v. State,* 28 Ind. 257; *Rhodes v. Otis,* 33 Ala. 578, 73 Am. Dec. 439; *Little Rock, M. R. & T. R. Co. v. Brooks,* 39 Ark. 403, 43 Am. Rep. 277.

Ch. 646, Laws of 1907, clearly conferred upon drainage commissioners the power to change the course of a navigable stream when such change would improve its navigability. Such a change is within the power of the state, and primarily the legislature is the judge of the necessity for the exercise of such power. *Arimond v. Green Bay & M. C. Co.* 31 Wis. 316; *Wis. River I. Co. v. Lyons,* 30 Wis. 61; *Black River I. Co. v. La Crosse B. & T. Co.* 54 Wis. 659; *Falls Mfg. Co. v. Oconto River I. Co.* 87 Wis. 124; *In re Southern Wis. P. Co.* 140 Wis. 245; *State v. Eau Claire,* 40 Wis. 533; *Withers v. Buckley,* 20 How. 84; *Loevy v. U. S.* 177 U. S. 621; *South Carolina v. Georgia,* 93 U. S. 4; *State ex rel. Wait v. Baxter,* 104 Minn. 364. The rule against destruction of inland navigable lakes applies only when they are navigable either in fact or in law, and does not prevent interference with bodies of water not meandered, not declared by statute to be navigable, nor capable of carrying commerce, and which constitute mere enlargements of a river. *Johnson v. Eimerman,* 140 Wis. 327; *Runyard v. Oetting Bros. Ice Co.* 142 Wis. 471; *Remington D. Dist.* 138 Wis. 621; *Bloomer v. Bloomer,* 128 Wis. 297, 311; *Ill. S. Co. v. Budzisz,* 115 Wis. 68.

SIEBECKER, J. The appellants assail the trial court's findings pertaining to the material facts involved in the organization of the drainage district under the provisions of the statutes. It is contended that the organization of the drainage district pursuant to the proposed drainage scheme will not in fact be promotive of the public health or general welfare, that there are navigable streams and lakes within its boundaries which will be wholly diverted from their channels or annihilated, and that the public rights of hunting and fishing in and upon such waters will thus be wrongfully destroyed. The area embraced within the proposed district contains a large quantity of low and swampy land along the border of the Mississippi river, known as river bottoms, through which

flow the waters of the Trempealeau river, which empties into
the Mississippi river.   It appears that the low areas of this
district are completely inundated at high water of these riv-
ers, and that the banks of the rivers, and the creeks, ponds and
sloughs, or lakes, are obliterated, forming one body of water;
that at stages of ordinary low water the Trempealeau river
and Pine creek flow in winding channels, bordered with low
banks, and that the channels spread out in places and form
what are called sloughs, ponds, or lakes, some of which at
times of low water are entirely separated from flowing water,
thus creating shallow and stagnant pools.   It is manifest that
the proposed scheme of dykes and drains would practically
prevent inundation of the area from freshets and high water
and would drain off the waters naturally collecting therein,
thus producing a large area of dry and tillable land and a con-
sequent destruction of insanitary conditions inimical to public
health.   These facts and conditions authorized the organiza-
tion of the drainage district, unless it should appear that pri-
vate rights of persons and the rights of the public were thereby
wrongfully invaded.

It is well established in the law of this state that the rights
of riparian owners on navigable waters rest upon the title to
the bank and that such rights may be condemned for public
purposes as other property upon payment of a just compensa-
tion therefor.   The claim that remonstrants' riparian rights
are to be injuriously affected by the change of the channel of
the Trempealeau river and by the removal of the water from
the drained area cannot operate to stay the hands of the state
in carrying out a public purpose so long as due provision is
made for compensating such riparian owners for any dam-
age done to their riparian interests.   This class of property
is subject to the paramount rights of the state in the exercise
of its governmental functions and is subject to condemnation
for public uses.   Since this drainage enterprise is in its ob-
ject and purposes a public one, and since provision for com-

pensation to persons for the damage caused thereby to their property has been made, there can be no legal objection thereto upon the ground that riparian rights are injuriously affected. Whatever damages a riparian owner may suffer as a result of carrying out the enterprise must, under the provisions of the statutes, be included in the assessment of damages, for which compensation is to be made in the same manner as other damages are ascertained and compensated.

It is strenuously contended that the court erred in holding that the navigation of the waters within the limits of the district would be improved and that no such substantial impairment of the public rights of hunting and fishing would result as would constitute an unlawful infringement of them by the state, holding them in its capacity as trustee for the benefit of all the people. A study of the facts shows that the objection to the proposed change of the channel of the Trempealeau river upon the ground that its navigability would not be improved is not sustained. The present channel is circuitous and shallow from its entrance into the district at the point called Marshland to its mouth at Trempealeau bay, and for considerable parts of its course is practically impassable to any watercraft or boats in ordinary stages of water. The topography of the district indicates that the proposed river channel will be as naturally adapted for the course of the river from Marshland to where it empties into Trempealeau bay as the course it now follows, for both of these courses form parts of the same river bottom or flat, over which the water naturally passes in its flow to the Mississippi. The evidence also shows that the proposed channel will be deeper and straighter and that it will confine the waters within its banks much better than the present one, and in connection with the proposed levees will hold the water in times of freshets and prevent the extensive inundations which have heretofore occurred. From these facts and conditions it is manifest that the navigability of this watercourse, forming the channel of the Trempealeau

river, will in fact be improved by limiting it to the proposed new channel.

The argument is made that such a diversion of the channel as is here proposed is not authorized under the statutes and the adjudications on the subject. Reliance is placed, among others, on the following cases in this court to sustain this claim: *Johnson v. Eimerman,* 140 Wis. 327, 122 N. W. 775; *Ne-pee-nauk Club v. Wilson,* 96 Wis. 290, 71 N. W. 661; *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* 74 Wis. 652, 43 N. W. 660; *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273; *Boorman v. Sunnuchs,* 42 Wis. 233; *Donnelly v. Decker,* 58 Wis. 461, 17 N. W. 389; *In re Dancy D. Dist.* 129 Wis. 129, 108 N. W. 202; *McLennan v. Prentice,* 85 Wis. 427, 55 N. W. 764; *Priewe v. Wis. S. L. & I. Co.* 103 Wis. 537, 79 N. W. 780; *In re Horicon D. Dist.* 136 Wis. 227, 116 N. W. 12. It was expressly decided in *In re Dancy D. Dist., supra,* that under the statutes then existent, providing for the organization of drainage districts, no authority was conferred by the legislature to impair the navigability of a river or of any navigable lake. Like declarations have been made in subsequent cases. Since these decisions the legislature, by ch. 646, Laws of 1907, has amended the drainage act, providing that the commissioners, to accomplish the purposes of the act, may do all necessary acts, "including . . . clearing out and removing obstructions from or changing the natural course of natural or artificial channels or streams within the limits of the drainage district." The act also provides: "The course of no navigable stream shall be changed unless such change will improve the navigability thereof." This amendment clearly confers on commissioners the power to change the natural course of a river if the change will improve its navigability. We think that the state, as the sovereign authority with power to regulate and keep free the navigable waters of the state, may grant the authority conferred by this statute. It has always been deemed the right of the state to

do whatever might be appropriate to regulate and improve navigation. *Wisconsin River I. Co. v. Lyons,* 30 Wis. 61; *Cohn v. Wausau B. Co.* 47 Wis. 314, 2 N. W. 546; *Black River I. Co. v. La Crosse B. & T. Co.* 54 Wis. 659, 11 N. W. 443. It is made apparent that a change in the channel as here proposed is well adapted to improve navigation, and the prosecution of the work is therefore, obviously, an appropriate exercise by the state of its right to promote the public interest in navigation. The contention that this diversion of the channel from the present location to the proposed new one operates as a destruction of a substantial part of the natural course of the river and of two well established lake expansions thereof is not supported in fact. As heretofore indicated, all of the low lands or bottoms of the drainage district form a marshy and boggy area, through any part of which the waters of the river might naturally form a channel. This is clearly shown by the changes which have occurred in the channel in recent times and by the apparent condition of these bottoms. Under such conditions the location of a new channel within an area through which the river might naturally seek its course is not such a diversion of the river from a natural bed as constitutes a destruction of an existing navigable watercourse. It is in effect providing a better and improved channel within the area through which the river might naturally flow, and hence is an improvement appropriate to promote navigation.

The contention is that such a change of the river channel will in fact operate to destroy navigable lakes within the district, and the findings of fact of the trial court are assailed on this ground. We find that the trial court's findings on this subject are supported by the evidence. The spreads of the river within the district are not separate bodies of water constituting inland navigable lakes or ponds. They have no existence independent of the river. These bodies have been formed by a scooping out of the bottoms. They are parts of the river and creek channels, and must be treated as insep-

arably connected therewith and as parts thereof. Under such circumstances and conditions it cannot be said that the proposed improvement affects inland navigable ponds or lakes, and the trial court's findings of fact on this subject must be approved.

The appellants strenuously contend that, if the proposed drainage scheme is adopted, the public rights of hunting and fishing in the navigable waters of the district, as they now exist, will be destroyed to a substantial and unlawful extent. It appears that Pine creek and its expansion, Mud lake, and part of the Trempealeau river, from its spread called Wilson lake, to Trempealeau bay, are navigable for small boats in ordinary stages of water and that they are so navigated by fishermen and hunters in pursuit of fish or fowl, but that in low water they are not navigable. The public rights of navigation and of fishing both exist in the navigable waters of the state, each independent of the other, and the state holds title to the beds of such waters in trust for such public purposes. The state also has the power, as such trustee for the public, to so regulate these public uses of navigable waters as to best accomplish and promote the public interests. The legislature has provided that drainage schemes may be undertaken if they promote the public health or general welfare. To accomplish this in regions connected with navigable waters may in some respects affect the public rights of navigation and fishing. As to the rights of navigation the legislature specifically provides the restriction that no change shall be made in the course of a navigable stream unless the change will improve navigation. We have found that this right will be improved by the contemplated improvement. The rights of fishing and hunting will be affected by the contemplated improvement in that the present navigable waters in the district afford a superior condition for hunting and fishing to that which will exist in the condition of the navigable waters after the proposed changes in the course of the Trempealeau river have been made. The legis-

lature must naturally have contemplated that hunting and fishing might be impaired in some degree as an incident to such a regulation of navigation and in the promotion of the public health and general welfare by a system of drainage. It must be assumed that the legislature in executing its governmental functions intended to guard the public uses of navigable waters against unauthorized impairment and subjected them only to such regulations as the public interests require and as are consistent with the preservation of the public rights. Can it be said in the instant case that the state, in authorizing this drainage scheme, acting through the agency of a drainage commission, has infringed on the public rights of fishing and hunting in violation of the trust for the public upon which the state holds the beds to navigable waters ? To constitute such an infringement of the rights of fishing and hunting it must appear from the facts and circumstances presented that there is an unauthorized impairment thereof in the light of the duty of the state to regulate other public interests. Applying these considerations to the situation presented here, is the difference in the fishing and hunting in the drainage district, as they are and as they will be hereafter, so substantial as to violate the trust to the public in this regard ? True, hunting and fishing will be somewhat impaired in the navigable waters of the drainage district, but not to an extent amounting to a substantial infringement of the right, when considered in connection with the regulation and guarding of the other public interests here involved. The restriction on fishing and hunting under the present conditions is not in its nature and magnitude such a deprivation to the public as to be a violation of the trust to the public. It cannot be said, therefore, to be an unauthorized exercise of the legislative power for carrying out the functions and duties of the state consistently with such public trust.

We find no reversible error in the record, and the findings and orders of the circuit court must be approved.

*By the Court.*—The order appealed from is affirmed.

The following opinion was filed June 7, 1911:

WINSLOW, C. J. (*concurring*). Doubtless it is true that the public rights of fishing and navigation are independent rights in the sense that a man is not obliged to be navigating while he is fishing, any more than he is obliged to fish while he is navigating. At the same time the public right to fish is incident to navigable waters only and is entirely dependent upon the fact that the waters are navigable; hence the fishing right is dependent upon, though not necessarily obliged to be exercised with, the right of navigation. *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273.

It clearly follows from this, that, when the state exercises its unquestioned right to improve navigation by straightening watercourses, deepening channels, and the like, it cannot be restrained in the exercise of that right by the mere fact that the fishing will be substantially damaged. The right of the state to better its navigable waterways is supreme. If there be a resulting impairment of the quality of the fishing in the navigable stream as improved, even to the point of practical extinction, this is a loss which the public must endure without complaint.

If commerce must await the pleasure of the occasional fisherman before it can ask for straighter channels or deeper water or both, then indeed it will be sadly handicapped. Were this true, many of our harbors could never have been built. But it is very manifest that it is not true. The right of the public to fish in navigable waters is indeed an independent right in the sense that a man does not need to navigate who can fish without navigating, as for instance from a bridge, but it is a right which the public has in navigable water only and necessarily is always subject to the state's paramount right to improve navigation.

MARSHALL, J. I concur in the foregoing opinion by Chief Justice WINSLOW.