DELTA FISH AND FUR FARMS, INC., Appellant, vs. PIERCE and others, Respondents.

*January 13—February 10, 1931.*

520

522

For the appellant there were briefs by *M. L. Fugina* of Fountain City, *Morris J. Owen* of Winona, Minnesota, and *Lees & Bunge* of La Crosse, and oral argument by *Mr. Geo. W. Bunge, Mr. Owen,* and *Mr. Fugina.*

For the respondents there was a brief by *Higbee & Higbee* of La Crosse, attorneys, and *John A. Markham* of Independence, associate, and oral argument by *E. C. Higbee.*

NELSON, J. The only question for decision on this appeal is whether the waters on the plaintiff's lands are public navigable waters or private waters.

This court, throughout its history, has always jealously guarded the navigable waters of this state and the rights of the public to use and enjoy them. A citation of the numerous authorities to sustain this statement seems wholly unnecessary.

But, in the view we take of this case, we are not here dealing with navigable public waters but rather with waters which were heretofore found by the circuit court for Trem-

pealeau county to be non-navigable in fact, which finding was in all respects approved by this court. *Merwin v. Houghton,* 146 Wis. 398, 131 N. W. 838. It appears from *Merwin v. Houghton,* and the record herein, that the Trempealeau drainage district was duly organized in the year 1910. No question is raised as to the validity of its organization. No claim is made that its organizers failed in any respect to comply with all of the provisions of the then existing laws relating to the giving of notice to the public. The original proceedings to establish the Trempealeau drainage district were had in the circuit court for Trempealeau county, the presiding judge being the Honorable E. C. Higbee, now one of the attorneys for the respondents in this action. Under the drainage law the commissioners appointed by the court were required to make a survey and to submit a detailed plan to the court. It appears that this duty was fully performed. It then became the duty of the court, after due notice, to conduct a hearing and to pass upon the feasibility of the plan proposed. The court held said hearing, at which persons who opposed the organization of such district on various grounds appeared and were heard.

At the time such hearing was had it was the settled law of this state that no drainage district could be formed which would result in the destruction or impairment of any navigable waters. *In re Dancy Drainage District,* 129 Wis. 129, 108 N. W. 202 (1906) ; *In re Horicon Drainage District,* 136 Wis. 227, 116 N. W. 12 (1908) ; *Johnson v. Eimerman,* 140 Wis. 327, 122 N. W. 775 (1909). The drainage law, however, authorized the commissioners to "do all necessary acts in . . . clearing out and removing obstructions from or changing the natural course of natural or artificial channels or streams within the limits of the drainage district." The law specifically provided that "the course of no navigable stream shall be changed unless such change will improve the

navigability thereof." In this situation it was the duty of the court to determine the very material and important question whether any navigable waters existed within the proposed district and, if any such existed, to see to it that such waters were not destroyed or impaired, or the course thereof changed unless such change would improve the navigability thereof. The court was clearly cognizant of its duty to determine whether any navigable waters were within the district and whether the formation of the proposed district would destroy or impair any navigable waters. The whole matter of navigable waters within the district was carefully considered, with the result that the court made numerous findings of fact and conclusions of law relating to such questions. The court specifically found that the Trempealeau river and Pine creek were subject to sudden rises following heavy rainfalls and that freshets had scooped out basins in many places the waters of which were entirely detached from the channels of these streams, leaving many ponds or sloughs without inlet or outlet, which, when the water subsided, many times imprisoned fish and in which the waters became stagnant and offensive, affording breeding places for mosquitoes, germs, bacteria, and other animal life; that in many cases the basins so scooped out were contiguous and adjacent to the channels of said streams so that the waters in them were of the same level as the water in the streams; that the location on the Trempealeau river known and referred to as Lake Wilson, and the location on Pine creek known and referred to as Mud lake, were the two principal examples of such conditions; that the entire current of Trempealeau river ran through the expansion commonly called Lake Wilson, and that the current of Pine creek continually flowed through the location called Mud lake; that Trempealeau river was meandered and, in ordinary stages of water, was navigable for small boats; that Pine creek was

not meandered and, in ordinary stages of water, was not navigable; that the proposed closing of the openings in the Burlington railroad right of way, the diversion of the channel of the Trempealeau river and Pine creek, and the construction of the proposed levee would effectually exclude the flood waters of the Mississippi river and the waters of the Trempealeau river and Pine creek from all that portion of the proposed district lying south and west of the diversion channel; that the proposed change in the channel of the Trempealeau river and Pine creek would greatly improve the navigability of these streams; that there were no navigable inland waters within the limits of that portion of the district proposed to be drained, and that the navigability of waters in said district, outside of the portion proposed to be drained, would in no manner be impaired. The court found as a conclusion of law that there were no navigable inland waters within the limits of that portion of said district proposed to be drained and that the navigability of the waters in said district, outside of the portion to be drained, would in no manner be impaired but would be materially improved.

These findings and conclusions were absolutely material and important, and were just as necessary to be found, preliminary to the organization of the drainage district, as were the findings required by the drainage district statutes. Sec. 1379—16, Stats. 1911; *Stone v. Little Yellow Drainage District,* 118 Wis. 388, 95 N. W. 405. The report of the commissioners was in all things confirmed and the commissioners ordered to proceed with the work with all convenient speed. From this order an appeal was taken to this court (*Merwin v. Houghton, supra*), with the result that said findings and order of the trial court were in all respects affirmed. A careful consideration of *Merwin v. Houghton* plainly reveals that every question raised on this appeal was considered and decided in that case. The proposed diversion of the waters

of the Trempealeau river and Pine creek into the new channel was approved. The finding that no other navigable waters would remain in said district after the waters of said streams had been diverted was also approved. The rights of those who had heretofore hunted and fished on the public navigable waters within the district, and the claim that the public rights of fishing and hunting in the navigable waters within the district would be destroyed, received careful consideration. All of these things so obviously appearing, we conclude that the decision of this court in *Merwin v. Houghton, supra,* is *res adjudicata,* and that the decision was final and conclusive so far as the material matters litigated therein are concerned.

The record shows that the court carefully considered and passed upon the question of navigable waters within the district, and that it was absolutely necessary to determine that question. That such question was material cannot be doubted. This being true, it must be held that this case is governed by *State ex rel. Atkinson v. McDonald,* 108 Wis. 8, 16, 84 N. W. 171, in which it is said: "The point falls squarely within the rule that every proposition assumed or decided by the court leading up to the final conclusion and upon which such conclusion is based, is as effectually passed upon as the ultimate question which is finally solved. *Brown v. Chicago & N. W. R. Co.* 102 Wis. 137, 77 N. W. 748, 78 N. W. 771; *State v. National Acc. Soc.* 103 Wis. 208, 79 N. W. 220; *School Trustees v. Stocker,* 42 N. J. L. 115."

The proposition that, although the waters of Trempealeau river and Pine creek have been in fact legally diverted to a new location or channel, they nevertheless remain in the old beds and must be considered as still existing there, is so inconsistent and unsound that we can neither approve nor countenance such contention. The clear effect of the judgment was to remove, or authorize the removal of, the waters

of those streams—the only navigable waters found—to a new location. When the work was completed and the streams were actually diverted pursuant to the terms of the judgment, no public navigable waters remained, even though the plaintiff has, for its own purposes, accumulated upon its lands waters falling upon the basin, and has added thereto the waters produced by the artesian wells.

That the order entered in the *Merwin Case* was a judicial determination which could only be set aside on appeal, is well settled. In *Stone v. Little Yellow Drainage District*, 118 Wis. 388, 95 N. W. 405, it was said, page 392:

"The sections above referred to provide for an application to the court by petition for certain relief; for notification to all others likely to be affected; for the framing of issues and the trial thereof in an entirely judicial manner by the court, with or without the aid of a jury; for the rendition of decisions upon such various detail questions, and the final entry of a so-called 'order,' having the characteristics of a most comprehensive decree, based upon the facts as the court shall decide them to be in the light of the law as the court shall construe it. That such order or decree is the culmination of an entirely judicial proceeding we cannot doubt, nor that, as a corollary thereof, it may be enforced by the court rendering it by any or all of those processes inherent in courts of justice."

The court further said, page 393, after referring to the necessary proceedings to obtain jurisdiction:

"From all these it results by primary legal logic that a decision upon all the facts presented and upon a construction of the law governing the situation, followed by rendition of a final order or decree in accordance with such decision and construction, was also within the jurisdiction of the court."

That the affirmance of the order by this court on appeal finally and conclusively settled all material matters therein litigated can hardly be questioned. That the judgment is binding upon all parties, their privies, the public, and others

who were constructively represented by those who appeared and made substantially the same contentions as are now being made in this action, seems well supported in the law. The law required public notice to be given of the hearing at which the issue of navigable waters was decided. Such notice was given. The general public was a party to the proceeding. Any member of the public had the right to appear and make such contentions in the matter as he desired to make. Certain members of the public did appear and did make the exact contentions now made by these defendants, as appears from a reading of the record herein and the decision in *Merwin v. Houghton, supra*. As long as the defendants, and the public in general, were given an opportunity to appear, the judgment as to them is *res adjudicata* and conclusive. 34 Corp. Jur. p. 1029, § 1459; *State ex rel. Atkinson v. McDonald*, 108 Wis. 8, 84 N. W. 171.

It appears from the decision rendered in *Merwin v. Houghton, supra,* that members of the public appeared in the proceedings and asserted the public right of hunting and fishing on plaintiff's lands. They could assert such claimed right only on the theory that navigable waters existed there or that the change of the navigable waters to the new channel, by diversion, would destroy or impair the fishing and hunting. Those questions were apparently fully litigated and decided. The rule seems to be general that where some taxpayers, citizens, or members of a class appear in litigation of an issue in which all taxpayers, citizens, or members of a class are interested and have a right to appear, those appearing are deemed to represent those who have not appeared and the judgment is conclusive on all such taxpayers, citizens, or members of such class whether they have appeared or not. *State ex rel. Atkinson v. McDonald*, 108 Wis. 8, 13, 84 N. W. 171; *Stevens v. Shull* (179 Ark. 766, 19 S. W. (2d) 1018) 64 A. L. R. 1258 and note; *Tallassee v. State ex rel.*

*Brunson* (206 Ala. 169, 89 South. 514) 20 A. L. R. 1127 and note. The effect of the authorities, as summed up in the notes, is "that a judgment . . . in an action or proceeding involving a matter of public right or interest is a bar to a subsequent action or proceeding by a different plaintiff or relator." That "where suit is brought to determine a public right involving a matter of general interest by one qualified citizen in behalf of himself and all others similarly situated, all such other citizens are parties to the proceeding by representation and are bound by the judgment not only as to matters which were litigated but also as to matters which existed at the time and could have been litigated in the case, the same as the actual formal parties on the record, regardless of whether they had actual notice of the pendency of the suit or not." *Florsheim v. Harding County,* 28 N. M. 330, 212 Pac. 451.

In our opinion, the judgment in the drainage proceedings was in fact a judgment *in rem.* It determined the status of the water on plaintiff's lands. It adjudged that the Trempealeau river and Pine creek were navigable and should be removed to a diversion channel and that all of the other water was not navigable. The judgment that the water remaining on plaintiff's lands was not navigable was made after due notice and full hearing. This judgment *in rem* was conclusive, as we view it, not only on the parties to the action and their privies and on those represented by the parties to the action but upon the subject matter of the action and all persons who might thereafter become interested therein. The authorities are uniform that a judgment *in rem* is conclusive on "all the world." 34 Corp. Jur. p. 1172; *State ex rel. Atkinson v. McDonald,* 108 Wis. 8, 84 N. W. 171. In the case just cited it was said (p. 14) :

"While a judgment in an action *in personam* is binding only on the parties of record and those claiming under them,

a judgment *in rem* renders the subject on which it operates 'what it declares it to be' and is consequently binding upon the world. Every person is supposed to be concerned in such an adjudication and to be constructively before the court. . . . The rule of *res adjudicata* is as broad, where status is the subject upon which the judgment acts, in that it is binding upon the whole world, as it is *inter partes,* where mere personal rights are the subject of the litigation."

A careful, yet comprehensive, view of the whole record, in connection with the drainage proceedings which led up to the decision in *Merwin v. Houghton, supra,* leads us to the conclusion that the learned circuit court which tried this action did not give due weight and proper consideration to *Merwin v. Houghton,* or to the matters which were in that action finally and conclusively determined. It is quite apparent that it failed, in large measure, to appreciate the holding in that case and its effect upon the non-navigable waters remaining upon the plaintiff's lands, but in fact relitigated the whole question as to the character of the waters upon plaintiff's lands which had theretofore been fully determined by the circuit court for Trempealeau county and by this court.

For the reasons stated the judgment of the circuit court for Buffalo county must be reversed, with directions to enter judgment granting to the plaintiff the relief prayed for.

*By the Court.*—Judgment reversed, with directions to enter judgment in accordance with this opinion.